JOHN R. DAVIS LUMBER COMPANY, Respondent, vs. HART-FORD FIRE INSURANCE COMPANY and others, Appellants. SAME, Appellant, vs. SAME, Respondents.

*January 16 — February 2, 1897.*

*Insurance: Contract by broker: Ratification: Cancellation: Notice to agent: Rescission of contract.*

1. Although sec. 1977, R. S., declares that whoever solicits or procures insurance from an insurance company on behalf of another, or makes any contract for insurance, or collects any premium, etc., shall be held to be an agent of such insurance company "to all intents and purposes," it cannot be construed to prevent an insurance broker employed to procure insurance for another from being the agent of the assured at the same time in procuring the policy; and the same rule applies as in other agencies, that the principal is bound by the acts and representations of the agent within the scope of his authority.  Where the two relations conflict, the statute must prevail.

2. An agreement made by an insurance broker, when procuring insurance from certain agents of insurance companies, that his principal should not take or accept additional insurance in the same companies from other agents thereof, is binding upon the principal, he knowing it to be the policy of insurance companies to limit the amount of insurance to be carried by them respectively on such property, even though he had no notice of such agreement until after the first loss; and if the assured then, with full knowledge of all the facts, insists upon taking the benefits of the policies procured in violation of that agreement, he thereby ratifies the same, whether originally authorized or not.

3. Where additional policies were procured by the assured in violation of the agreement of such broker, and the insurance companies, after the first loss, insisted upon recalling, revoking, and unmaking the first contracts of insurance, and treating them as if they

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

had never been in force, and claiming that they were wholly inoperative from the beginning, as by tendering back the whole amount of the premiums, demanding a return of the policies, and keeping the tender good, they cannot be held to have waived such agreement.

4. A notice of cancellation served on the broker who, as agent for the assured, procured the policies, after his agency had ceased, is ineffectual.

5. The right to cancel a policy exists only by contract, and the provisions of the policy conferring such right must be strictly complied with in order to effect a cancellation. There must be an actual notice of cancellation, not a mere notice of a desire to cancel or a notice that the policy will be canceled, or a notice to cancel, and it must be served on the proper person, and a tender made of the unearned premium. A tender and demand for a surrender of the policies, made for the purpose of a rescission or cancellation from the beginning and refused on that ground, cannot operate as a sufficient tender to effect a cancellation.

APPEALS from judgments of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed on plaintiff's appeal; reversed on that of the defendants.*

Action to recover on several policies of insurance against loss by fire. The *Hartford Fire Insurance Company of Hartford, Connecticut,* the *National Fire Insurance Company of Hartford, Connecticut,* and the *Phœnix Assurance Company of London, England,* each issued one of such policies, for $5,000, through its agents, Sunderland & Ostrander, at West Superior, Wisconsin, June 10, 1894, and each of such companies made another of such policies for $5,000, through its agents, Robert Shields & Son, at Neenah, Wisconsin. The pleadings raised the disputed questions covered by the findings of fact, and such requests to find as are referred to in this statement and the opinion following. The case was tried by the court, and resulted in findings of fact, in substance as follows: (1) Plaintiff, in June, 1894, had a large lumber manufacturing plant at Phillips, Wisconsin, upon which it carried insurance on the co-operative plan, to

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

the extent of about $182,000. (2) Defendants' agents at West Superior, Wisconsin, also their agents at Neenah, Wisconsin, had general authority to issue and cancel policies, receive and give notice of cancellation of the same, under the rules and regulations of the defendants, but they were not permitted to issue double lines; that is, one agent was not permitted to issue a policy on property covered by a policy issued from the other agent in the same company. (3) H. Winchester was an insurance agent at Phillips, Wisconsin, during all the time mentioned in the findings, but not the agent for the defendants. For several years he had written what insurance he could in companies represented by him, on plaintiff's property, and was permitted by it to obtain insurance on such property in other companies. Such insurance, written or procured by him, amounted to about eighty per cent. of that carried on the property. (4) All policies obtained by Winchester were subject to plaintiff's approval. (5) During the time Winchester obtained insurance on plaintiff's property as aforesaid, it also obtained some insurance through other agencies. (6) There was no agreement between plaintiff and Winchester that the latter should control all the insurance. (7) Winchester kept a running account of premiums with plaintiff, and was paid from time to time as he desired. (8) About October 9, 1894, Winchester obtained a $5,000 policy in each of the companies named, at their West Superior agency, and agreed with Sunderland & Ostrander, the agents, that there should be but one line of policies issued by defendants on plaintiff's property taken by him; but plaintiff was not informed of such agreement till after the first fire hereafter mentioned. (9) June 5, 1894, the president of the plaintiff ordered Shields & Son, agents for defendants at Neenah, to issue a $5,000 policy in each of the companies. Such agents had carried that amount of insurance upon the property in the same companies for some time, and the order given was for re-

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

newals.   The policies so ordered were not delivered or paid for till June 20, 1894.   (10) At the time the order last mentioned was given, plaintiff's officers did not know that Winchester was about to procure insurance in the same companies, of Sunderland & Ostrander; neither did they have such knowledge till after the first fire hereafter mentioned. (11) Soon after the policies were issued, defendants, through the daily reports sent by their agents, were informed that two lines of policies had been issued, and immediately gave notice to such agents that one line must be canceled; and thereupon such agents corresponded with the company regarding such cancellation, till after June 19, 1894.   (12) Plaintiff did not know of the controversy mentioned in No. 11 till after June 19, 1894, at which date a fire occurred which partially destroyed the property covered by the policies. (13) July 7, Sunderland & Ostrander telegraphed Winchester to cancel the policies issued from that agency; that no claim would be made for premium, and none would be accepted.   The telegram containing such notice was read to plaintiff's secretary, B. W. Davis, at the office of the plaintiff.   Winchester replied to the telegram that the policies had been charged to plaintiff; that, when canceled, it would be *pro rata* on items not affected by the fire; and that a draft for the amount due would be sent when canceled.   On July 17, defendants tendered to the plaintiff the full amount of premiums on the policies, and demanded their surrender, which was refused.   July 23, thereafter, plaintiff paid to Winchester the premiums on the policies, and he immediately sent the same by a draft, including premiums on other policies, to Sunderland & Ostrander. (14) July 27, the remaining portion of the property covered by the policies was destroyed; and on August 11, thereafter, Sunderland & Ostrander returned the draft sent as aforesaid, to Winchester, at Phillips, and the amount was duly tendered back to plaintiff, and refused.   (15) June 23,

1894, Shields & Son telegraphed plaintiff that the policies issued by them were canceled, subject to loss, and to return the same. On June 24, defendants tendered the full amount of the premium on such policies to the plaintiff, and demanded their surrender, which was refused. July 22, the tender and demand were repeated, and again refused, plaintiff offering on both occasions to surrender the policies subject to the loss of June 19, on payment of the unearned premium. (16) On July 7, also July 10, defendants notified plaintiff that the tender of July 2 would be kept good, and the policies treated as void. Defendants, after June 19, insisted upon recalling the policies issued at the Neenah agency, and treating the same as unauthorized and void.

As conclusions of law, the court found, in substance: (1) That Winchester was the agent of plaintiff to procure insurance subject to plaintiff's approval, and possessed no other authority. (2) That defendants waived the right to insist upon a cancellation of the policies issued at the West Superior agency, by collecting the premiums thereon July 23; and that plaintiff was entitled to a judgment on each of such policies, on account of the first fire, of $1,090.88, with interest thereon at the rate of six per cent. per annum from September 19, 1894, and $3,576.49, with interest thereon at the same rate from the 17th day of November, 1894, on account of the second fire. (3) That the policies issued at the Neenah agency were in force June 19, 1894, and plaintiff entitled to recover on each $1,090.88, with interest thereon at the rate of six per cent. per annum from the 19th day of September, 1894, on account of the first fire. (4) That the policies issued at the Neenah agency were duly canceled July 2, 1894. Several requests to find were refused. Exceptions were filed, sufficient to present the questions discussed in the opinion. Judgment was rendered in plaintiff's favor against each of the defendants, according to the findings and conclusions, from which judgments plaintiff ap-

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

pealed, upon the ground that the court erred in finding that the Neenah policies were canceled before the second fire. Each of the defendants appealed, upon the ground that the court erred, among other things, in finding that the policies issued at the Neenah agency were binding on the defendants at any time, and in finding that the policies issued at the West Superior agency were binding after the first fire, by reason of the payment of premiums to Winchester, July 23.

For the plaintiff there was a brief by *Phillips & Hicks,* attorneys, *M. H. Beach* and *Moses Hooper,* of counsel, and oral argument by *M. C. Phillips, E. R. Hicks,* and *M. H. Beach.* They argued, *inter alia,* that the defendant, by tendering the whole premium, sought to rescind the contract of insurance from the beginning and deprive the plaintiff of all claim for the loss already suffered. *Rankin v. Amazon Ins. Co.* 89 Cal. 203. By electing to rescind the company waived its right to cancel. Bishop, Contracts, § 808; 7 Am. & Eng. Ency. of Law, 32. There was no agreement to cancel and no compliance with the terms of the policy in respect to cancellation. *Bingham v. Ins. Co. of N. A.* 74 Wis. 498, 504; *John R. Davis Lumber Co. v. Scottish Union & N. Ins. Co.* 94 id. 472; Wood, Fire Ins. § 113; May, Ins. § 67; *Home Ins. Co. v. Curtis,* 32 Mich. 402; *Franklin Ins. Co. v. Massey,* 33 Pa. St. 221; *Albany City Ins. Co. v. Keating,* 46 Ill. 395; *Griffey v. N. Y. Cent. Ins. Co.* 100 N. Y. 417; *Lattan v. Royal Ins. Co.* 45 N. J. Law, 458; *Ætna Ins. Co. v. Weissinger,* 91 Ind. 299. The broker was the agent of the insurance company. Sec. 1977, R. S.; *Alkan v. N. H. Ins. Co.* 53 Wis. 136. If the agent of the plaintiff, his agency extended only to procuring the insurance. *Hinman v. Hartford Ins. Co.* 36 Wis. 159; *Bourgeois v. Mut. F. Ins. Co.* 86 id. 402; *Stehlick v. Milwaukee M. Ins. Co.* 87 id. 322; *Schauer v. Queen Ins. Co.* 88 id. 561; *Grace v. Am. Cent. Ins. Co.* 109 U. S. 278; *Hermann v. Niagara F. Ins. Co.* 100 N. Y. 411; *Broadwater v. Lion F. Ins. Co.* 34 Minn. 465;

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

*White v. Connecticut F. Ins. Co.* 120 Mass. 339; *Indiana Ins. Co. v. Hartwell,* 100 Ind. 566; *Ins. Co. of N. A. v. Forcheimer & Co.* 86 Ala. 541; *Ins. Cos. v. Raden,* 87 id. 311; *Huggins Cracker & Candy Co. v. People's Ins. Co.* 41 Mo. App. 530.

For the defendants there were briefs by *Barbers & Beglinger,* attorneys, and *Thomas Bates,* of counsel, and oral argument by *C. Barber* and *Thomas Bates.* To the point that the plaintiff was estopped to deny the broker's authority to make the agreement claimed by retaining the policies after knowledge of such agreement, they cited *Atlantic Ins. Co. v. Carlin,* 58 Md. 338; *Reid v. Hibbard,* 6 Wis. 175; *N. W. Iron Co. v. Ætna Ins. Co.* 26 id. 78; *Burke v. M., L. S. & W. R. Co.* 83 id. 410; *Strasson v. Conklin,* 54 id. 102; *Parish v. Reeve,* 63 id. 315.

MARSHALL, J.   The findings of fact are to the effect that Winchester was an insurance broker, with all the ordinary authority as such, to procure insurance for plaintiff, subject only to its approval respecting the character of the insurance companies issuing the policies; that, as such broker, he procured for plaintiff three of the policies in question, from defendants' agents, Sunderland & Ostrander, at West Superior, Wisconsin, which, for convenience, we will designate as the first line; that such policies were issued in consideration, in part, of an agreement made with Winchester on plaintiff's behalf, that plaintiff would not take or accept any policy on the same property in either of the defendant companies from any other agent or agents, but that plaintiff did not know of such agreement till after the fire of June 19, 1894.   From such facts, the trial court was requested to find, as a conclusion of law, that the plaintiff was bound by the agreement pursuant to which such first line of policies was issued, which request was refused, and a decision made, instead, that the authority of Winchester, though agent for

plaintiff to procure the policies, was limited to such procure-
ment, and that plaintiff was not bound by the agreement
not to take a double line of insurance in the defendant com-
panies.   By the learned judge's opinion we are informed
that his conclusion was based on the ground that Winchester
was a special agent, and that, though in fact the agent for
plaintiff, in law he was the agent for defendants, under sec.
1977, R. S.

Leaving out of view the statute, which was evidently very
persuasive with the trial court, what the powers of an in-
surance broker are can hardly be a subject for serious con-
troversy.   He is the agent for the assured, according to all
authorities on the subject, though at the same time, for some
purposes, he may be the agent for the insurer, and his acts
and representations within the scope of his authority as such
agent are binding upon the assured.   Mechem, Agency,
§ 931; *Hartford F. Ins. Co. v. Reynolds,* 36 Mich. 502;
*Standard Oil Co. v. Triumph Ins. Co.* 64 N. Y. 85; *Hamblet
v. City Ins. Co.* 36 Fed. Rep. 118; May, Ins. § 124A.   Says
Mr. Justice Page, in *Am. F. Ins. Co. v. Brooks* (Md.), 34
Atl. Rep. 373: "It appears to be well settled that, where
one engages another to procure insurance, the person so em-
ployed is agent for the insured, and not for the insurer, in
all matters connected with such procurement." Questions
involving the scope of the powers of an insurance broker to
represent the insured arise most frequently where notice of
cancellation is served by the insurer on such broker, when
the contract of insurance requires it to be served upon the
insured.   In such cases the question turns on whether the
employment of the broker extended beyond the mere pro-
curement of the insurance.   If not, it is held that his agency
ceased upon the delivery and acceptance of the policy, so
that service of notice of cancellation on him was ineffectual.
*Kehler v. New Orleans Ins. Co.* 23 Fed. Rep. 709; *Franklin
Ins. Co. v. Sears,* 21 Fed. Rep. 290; *Body v. Hartford F.*

*Ins. Co.* 63 Wis. 157; *Hermann v. Niagara Ins. Co.* 100 N. Y. 411; *Grace v. Am. Cent. Ins. Co.* 109 U. S. 278; *Broadwater v. Lion F. Ins. Co.* 34 Minn. 465; *White v. Conn. F. Ins. Co.* 120 Mass. 330; *Indiana Ins. Co. v. Hartwell,* 100 Ind. 566. But the broker may be so clothed with authority as to have full power to act for the insured in canceling, as well as procuring, policies. *Standard Oil Co. v. Triumph Ins. Co., supra; Hartford F. Ins. Co. v. Reynolds, supra.* In all cases the familiar rule respecting the relation of principal and agent applies, that, within the scope of his authority to procure insurance, he stands in the place of the principal, and the latter is bound by whatever, within such scope, such agent may do, to the same extent as if it were done by such principal.

Such is the law pertaining to this subject, unless varied by sec. 1977, R. S., which probably exerted controlling influence with the trial judge. Such section provides that "whoever solicits insurance on behalf of any insurance corporation or property owner, or transmits an application for insurance, or a policy of insurance, other than for himself, to or from any such corporation, or who makes any contract for insurance, or collects any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance corporation, or advertises to do any such thing, shall be held to be an agent of such corporation to all intents and purposes." Obviously, under such section, Winchester, for some purposes, was the agent of the defendants. Such is the effect of *Schomer v. Hekla F. Ins. Co.* 50 Wis. 575, and other cases in this court. He was their agent to deliver the policy. He was their agent in respect to any representations made by him to the plaintiff. He was their agent to receive the premium, and for some other purposes. But that did not prevent him from being plaintiff's agent at the same time in procuring the policy; and in respect to everything which did not conflict

with the statutory agency for the defendants. 2 Am. & Eng. Ency. of Law, 595. In *Wood v. Firemen's F. Ins. Co.* 126 Mass. 316, where a similar question, under a similar law, was under discussion, Mr. Justice COLT said: "The statute relating to agents of insurance companies does not change the rule of the common law regulating the power of agents to bind their principals;" and further, in effect: The statute cannot be construed so as to prevent the person who is agent for the insurer for some purposes, by virtue of the statute, from being the agent for the insured for other purposes. He may well be agent for each in matters which do not conflict. Sec. 1977, we hold, does not vary the common-law rule respecting the relations of principal and agent, so but that an insurance broker, in the procurement of an insurance policy, may bind his principal in matters pertaining to such procurement, though it clothes him at the same time with power to bind the insurance company, as its agent, in matters within the scope of the statute. The common-law rule exists, notwithstanding the rule of the statute, except where the two conflict, and then the former must give way to the latter.

Applying the foregoing to the facts of this case, no reason is perceived why Winchester did not bind the plaintiff by the agreement he made with Sunderland & Ostrander against a double line of insurance. It was the usual and proper course to pursue to limit the proportion of insurance that each company would carry on plaintiff's property. Plaintiff's officers knew that such was the policy pursued generally by insurance companies, as sufficiently appears from the evidence. They could not have obtained the policies without submitting to such policy. They knew that, when they clothed Winchester with authority to procure the insurance, it must be procured subject to such policy. Therefore they necessarily clothed him with authority to make the arrangement that he did to protect the defend-

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

ants, and they are bound thereby, even though they had no notice of the agreement till after the first fire.    Moreover, plaintiff's officers, with full knowledge of the facts obtained after the fire of June 19, insisted on taking the benefits of the policies; and, by their conduct in that regard, they ratified the agreement in question, whether it was originally authorized or not.   The rule applies that if one, with knowledge of the facts, accepts the benefit of an act done in his behalf by another, he thereby assumes its responsibilities by accepting such benefits, though the act be done without original authority.   He makes it his act, and is bound to the same extent as if the same were originally authorized.   So held in *Samo v. Gore Dist. M. F. Ins. Co.* 26 U. C. C. P. 405, where, in discussing the subject of whether representations made by a broker in obtaining insurance were binding on the insured by ratification, HAGGERTY, C. J., said, in effect: The plaintiff cannot claim the benefits of an insurance policy obtained by the broker as his agent, and at the same time insist that he is not liable for that agent's statements, on the faith of which statements being true the insurance was effected.

The views above expressed lead to the conclusion that the trial court erred in the decision contained in the first conclusion of law, to the effect that plaintiff was not bound by the agreement made between Winchester and Sunderland & Ostrander to protect defendants against the danger of being held liable upon two lines of policies, and erred in not concluding, as requested by defendants' counsel, that such agreement was binding when made, and also erred in refusing to find, as requested by them, that plaintiff was bound by such agreement by ratification.

It does not necessarily follow from the foregoing that the judgments should be reversed on defendants' appeals, for if, notwithstanding the erroneous conclusion of the trial court, the judgments are yet right on the facts found, or on the

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

evidence, they must be affirmed. *Cornell v. Barnes*, 26 Wis. 473; *Sanford v. McCreedy*, 28 Wis. 103. It is therefore important to inquire whether the agreement made with Sunderland & Ostrander that plaintiff would accept but one line of insurance from each of the defendants was waived by them. The evidence shows that the policies obtained of Robert Shields & Son (which for convenience we will call the " second line," to distinguish them from the policies issued at the West Superior agency, which we call the " first line") were ordered by John R. Davis, June 5, 1894; that they were not paid for or delivered till after the fire of June 19, 1894; that, as soon as defendants were informed that the second line of policies had been ordered, they insisted upon one of the lines being canceled, and gave some preference to the second line; that June 19, 1894, after the fire, Sunderland & Ostrander were assured by Winchester that no claim would be made against defendants under any policies, except those issued at their agency; that the next day John R. Davis called on Shields & Son, and paid for and obtained possession of the second line of policies; that, as soon as defendants learned that the second line of policies had been delivered, they ordered Shields & Son to pay back to plaintiff the entire amount of the premiums, and to cancel such policies; that thereupon the agents sent a telegram to plaintiff, to the effect that the policies were canceled, subject to loss; that such telegram was followed by the service of a notice on plaintiff on the 27th day of June, 1894, to the same effect, at which time a tender of the full amount of the premiums was made, accompanied by a demand for a return of the policies; that such tender and request were repeated on the 2d day of July, 1894, and such tender was kept good down to the time of the trial; that plaintiff refused to receive the money tendered, or to comply with the request to return the policies, or to submit to the cancellation thereof, as demanded, or otherwise, except in such man-

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

ner as to protect its causes of action for loss on account of the fire of June 19, 1894; and defendants persisted in their position that plaintiff should accept the full amount of the premiums, and return the policies as void from the beginning. It will be observed that defendants' position was consistent only with a determination on their part to rescind the contracts of insurance altogether; and that of plaintiff's officers only with the theory that such position was fully understood by them, and that their intention was not to submit to any cancellation but such as could not prejudice their claims for loss alleged to exist on account of the fire of June 19. The trial court so concluded, and embodied such conclusion in the findings of fact in No. 16, to the effect that, "after the fire of June 19, the defendants insisted upon recalling, revoking, and unmaking the contracts of insurance with plaintiff company, issued by Robert Shields & Son, and treating them as if they had never been in force, and each took the position that that line of insurance was wholly inoperative from its inception." It would seem from this that no claim can be seriously made, but that, if the contract against a double line of insurance was binding on plaintiff when made, or by a subsequent ratification, and it was so binding, it was not at any time thereafter waived. The evidence and the findings of fact are conclusive on this point. From the foregoing it follows that the conclusion of the trial court that defendants are liable upon the second line of policies for the fire of June 19, 1894, cannot be sustained, and that it was rightly decided that they are not liable on such policies for the fire of July 27, 1894.

There is left to be determined on defendants' appeals the questions relating to their liability for loss on the first line of policies for the fire of July 27, 1894. It is claimed on the part of the defendants that such policies were canceled by the proceeding covered by the thirteenth finding of fact, to the effect that, July 7, Sunderland & Ostrander tele-

graphed Winchester at Phillips, Wisconsin, to cancel such policies; that no premium had been received or would be accepted; that on such date the policies were in the possession of plaintiff; that it owed Winchester therefor, and that he was indebted for the premiums to defendants; that Winchester promptly notified plaintiff of the contents of such telegram; that plaintiff notified Sunderland & Ostrander that only a cancellation under the conditions of the policies would be consented to; that on July 7, 1894, to guard against any question that might arise growing out of payment of the premiums by plaintiff to Winchester, or acts equivalent to such payment, defendants caused the full amount of the premiums to be tendered to plaintiff, and a surrender of the policies demanded.

From what has heretofore been said, Winchester having delivered the policies and his connection therewith as plaintiff's agent to procure the same having ceased, a notice of cancellation served on him was of no value. Though if he were so circumstanced that if a notice of cancellation served upon him would have been effectual, no such notice was served. He was directed *to cancel* the policies. If that gave him authority to make the cancellation, or to give the proper notice of cancellation to plaintiff, he did not exercise it. In fact, there does not appear to have been any effort to cancel the policies under the conditions contained in the contract. The law is well settled that a policy of insurance cannot be canceled under the provisions in that regard, unless such provisions are strictly followed. The right of cancellation does not exist at all except by contract, and a clause in that regard is in the nature of a condition precedent, which must be strictly complied with in order to make an effort to cancel effective to accomplish its purpose. *Van Valkenburgh v. Lenox F. Ins. Co.* 51 N. Y. 465. There must be an actual notice of cancellation, within the meaning of the policy, not a mere notice of a desire to cancel or a no-

tice that the policy will be canceled, or a notice to cancel; and the notice must be served on or given to the proper person, and a tender of the unearned premium must be made for the purpose of meeting the condition of the contract. Nothing short of that will do. Wood, Fire Ins. § 113; *Mohr & Mohr Distilling Co. v. Ohio Ins. Co.* 13 Fed. Rep. 74; *Quong Tue Sing v. Anglo-Nevada Ass. Corp.* 86 Cal. 566. As stated by the learned circuit judge in his opinion, relating to the second class of policies, an excessive tender does not render it ineffective, but with this modification, for the purposes for which such tender is made; but a tender and demand for a surrender of the policies, made for the purpose of a rescission and refused on that ground, cannot operate as a sufficient tender to effect a cancellation under the terms of the policy. Any other rule would be dangerous and inconsistent with the whole theory of a cancellation by contract. To effect such a cancellation, the minds of the parties must meet, the same as in respect to any other contract; hence a tender and demand for the purpose of canceling a policy from the beginning, refused on that ground, will form no legitimate basis whatever upon which to claim a cancellation pursuant to the condition contained in the policy. Where the policy provides that it may be canceled on notice and payment of the unearned premium, such provision is in the nature of a continuing, irrevocable offer, and when accepted, according to its terms, a new contract is made, which terminates the policy from the date of such acceptance. Under each of the policies in question, plaintiff was bound by such an offer to submit to its cancellation, to take effect at the date of its acceptance. Such an offer has never been made or accepted as to either of such policies, but a demand for a cancellation of the policies from the beginning was made, which was refused. The minds of the parties never met on the subject of cancellation pursuant to the contracts; hence the condition precedent contained therein,

John R. Davis Lumber Co. vs. Hartford Fire Ins. Co. and others.

the performance of which was requisite to the cancellation defendants now contend for, has never been performed.

The trial court found that defendants are liable on the first policies for the fire of July 27, because of the payment of the premiums to Winchester, July 23; that such payment operated as a waiver of the cancellation of the policies if such cancellation had theretofore taken place. Such findings were excepted to, but, as they are only made on the theory that the policies were canceled prior to such payment (and we have found that they were not), it is unnecessary to consider the assignments of error predicated thereon.

A further claim is made on defendants' appeals that each judgment was entered for $318.54 in excess of the amount ordered at the foot of the findings. Such claim may not be exactly correct, but a computation of the interest that we have made sufficiently shows that there was a serious error made by the plaintiff in that regard, and that such error is approximately as claimed by defendants.

The result of the foregoing is that plaintiff's appeals from the judgments to the effect that no recovery can be had on the policies obtained of Robert Shields & Son, June 20, 1894, for the fire of July 27, 1894, must be affirmed; and that, on defendants' appeals, the judgments must be reversed as to the recovery on the second line of policies for the first fire, and on the second line of policies for error in computing interest, and the cause remanded with directions to enter the proper judgments in conformity herewith, as indicated in the mandate.

*By the Court.*— That part of each judgment appealed from by plaintiff is affirmed; and on defendants' appeals the judgments are reversed, and the cause remanded, with directions to enter judgments in favor of the plaintiff for $1,090.88, with interest thereon at the rate of six per cent. per annum from September 19, 1894, and $3,576.49, with interest thereon at the same rate from the 17th day of No-

vember, 1894, with costs as taxed in that court, against the defendant *Hartford Fire Insurance Company of Hartford, Connecticut*, and a like judgment against the *National Fire Insurance Company of Hartford, Connecticut*, and a like judgment against the *Phœnix Assurance Company of London*. Full costs are allowed to each of the defendants in this court on the two appeals from the judgments against such defendant, except that only one third of defendants' costs for printing on their appeals shall be taxed in each judgment on such appeals, and one third of defendants' costs for printing on plaintiff's appeals shall be taxed against plaintiff in each judgment on such appeals.