Action commenced by Martin Wailer against Door County Mutual Insurance Company to recover $2,400 from defendant for loss sustained by plaintiff by the burning of his dwelling and personal property covered by a fire insurance policy issued by defendant. He alleged in his complaint the issuance of the policy for a term of three years from January 28, 1946; that the property was destroyed by fire on February 12, 1948; that he had fulfilled all conditions of the policy on his part; and that defendant denies liability to plaintiff under the policy and refuses to pay the loss. In its answer defendant admitted the issuance of the policy; but alleged *Page 325 
that in a letter dated January 8, 1948, plaintiff demanded that defendant cancel the policy on January 10, 1948, which defendant did; and denied that it was in force and effect on February 12, 1948, and that it was indebted to plaintiff on the policy. Upon the affidavits filed by plaintiff and the records and files in the action, he moved for summary judgment. Counteraffidavits were filed by defendant. The court denied plaintiff's motion for summary judgment; and he appealed from the order.
Defendant is a town mutual fire insurance company organized under ch. 202, Stats. It had issued a town mutual fire insurance policy to plaintiff for a term of three years, which would have expired on January 28, 1949, and the sole question on this appeal from the order denying plaintiff's motion for a summary judgment is whether the policy was in effect when his property was destroyed by fire on February 12, 1948, or whether the policy had been previously canceled by plaintiff.
The policy is a "Standard Town Mutual Policy," as prescribed in sec. 202.085, Stats., and in relation to "Cancellation of Policy" by the insured there is in the policy the provision which reads:
"This policy shall be canceled at any time at the requestof the insured, provided he shall pay his pro rata share of all claims then existing against the company before cancellation shall become effective. In such cases the company shall, upon demand, and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. . . ."
There are also applicable to a cancellation of the policy by an insured the provisions in sec. 202.13, Stats., that, —
"Any member may withdraw at any time by returning his policy with the request for its cancellation written thereon *Page 326 
or by a notice in writing over his signature to the president or to the secretary and paying his share of all claims then existing against the corporation. . . ."
Plaintiff, in a letter to defendant dated January 8, 1948, stated:
"Please cancel fire policy No. 33281, also storm policy No. 2902 on the 10th day of Jan. 1948 at noon. This copy policy is the only policy we have."
Plaintiff's copy of the policy was inclosed in the letter. The original policy was held by a mortgagee. In reply to that letter the defendant, in a letter dated January 11, 1948, and received by plaintiff, stated:
"We have your request dated January 8th, for cancellation of your fire and storm policies as of the 10th of this month. We are rather surprised to receive such a request from you who have so recently benefited on your policy with this company. Before complying with your request, we feel that in fairness to you, individually, as well as to this, your company, we should acquaint you with some facts of which you are perhaps not aware. By the handwriting in the body of your request, we understand that Mr. Alfred Schopf has been urging you to shift to the Northeastern Mutual. We have received quite a number of similar requests."
And then, after stating some matters to inform plaintiff why he should not shift to the Northeastern Mutual Fire Insurance Company, the letter concluded with the statement, —
"Now, Mr. Waller, we have attempted, in defense of our own home industry, to lay these bare facts before you and we trust you will consider them. Don't you think it would be proper, and also wise, to wait at least until your policies expire before you shift? In that way, you would not be participating in the above-mentioned `run on the bank,' and would thus avoid being unfair to your friends and neighbors about you who chose to stand by their own home company."
Plaintiff did not reply to that letter, and nothing further was heard by defendant from the plaintiff. He had immediately *Page 327 
obtained a fire insurance policy with the Northeastern Mutual Fire Insurance Company for the same amount of coverage on his property; and when it was burned on February 12, 1948, that company paid plaintiff that amount under its policy.
Upon plaintiff's motion for summary judgment, defendant filed an affidavit by its secretary in which he stated:
"That since January 8, 1948, the day on which the plaintiff wrote and mailed to defendant, a letter canceling his insurance policies with the defendant corporation, the plaintiff has never withdrawn or attempted to withdraw his cancellation of said policies and his cancellation of the insurance contract with the defendant. . . . That on January 10, 1948, the copy of the policy, being No. 33281, which plaintiff had mailed to defendant, was stamped `Canceled' by the defendant. That on February 11, 1948, the defendant, having heard nothing further from plaintiff, and being convinced that the plaintiff wished his policies of insurance canceled, issued and signed check No. 5261 to the plaintiff, Martin C. Waller, for $10.85 that being the amount of unearned premium, to which plaintiff was entitled. That plaintiff's policies of insurance and contract with the defendant were canceled and the plaintiff was no longer a policyholder in the defendant company at the time he suffered his fire loss on February 12, 1948."
And in an affidavit by Josephine Peffer, who had charge of defendant's office, she stated that on February 11, 1948, she issued the check to plaintiff for $10.85 as the unearned premium on his policy, and she wrote a letter to plaintiff, which was signed by defendant's secretary and in which he stated:
"Not having heard from you in reply to our letter of January 11th, we assume that you do not care to reconsider your decision to cancel your policies with our company. Therefore, we inclose our check for the premiums due you."
In relation to that letter and the inclosed check dated February 11, 1948, plaintiff stated, in an affidavit filed on his motion for summary judgment, that, — *Page 328 
On February 14, 1948, he received from the defendant a letter which was dated February 11, 1948, and postmarked at Sturgeon Bay on February 13, 1948, at 6:30 p.m., inclosing checks for the unearned premiums paid by the plaintiff on the policy of January 28, 1946, and these checks were returned by him to defendant on February 14, 1948; and a proof of loss was furnished.
As it is undisputed that when plaintiff on January 8, 1948, wrote and sent to defendant his letter unequivocally requesting the cancellation of his policy, of which he inclosed his copy, and that when on January 10, 1948, defendant's secretary stamped that copy of the policy "Canceled," there were no claims against defendant because of which he would have been liable for his pro rata share thereof, the requested cancellation became effective immediately on January 10, 1948, in view of the above-quoted provisions in relation to "Cancellation of Policy" in sec. 202.13, Stats., and in the prescribed paragraph relating to "Cancellation of Policy" which is required by sec. 202.085, Stats., in the standard town mutual policy. Under and by reason of those provisions plaintiff's unconditional surrender of his copy of his policy with his unequivocal request that it be canceled by defendant "on the 10th day of Jan. 1948 at noon," operated ipso facto as the cancellation at that time of defendant's liability under the policy. As stated in 29 Am. Jur., Insurance, pp. 270, 271, sec. 294, —
"Property insurance policies generally contain provisions allowing cancellation at the request of the insured. The New York standard fire policy, for instance, contains a provision to the effect that `this policy shall be canceled at any time at the request of the insured.' Under such provisions, the surrender of a policy with a request that it be terminated operates ipso facto as a cancellation."
If a policyholder demands the cancellation of his standard town mutual policy, and there are no claims against the company at that time because of which he would be liable *Page 329 
for his pro rata share, the policy is canceled ipso facto without any further action on the part of the company; but it is liable thereafter upon a demand by the policyholder to pay to him the unearned premium. Whether or not such unearned premium is paid, in no way delays or affects the cancellation of the policy. As membership in a town mutual insurance company imposes liabilities in addition to the payment of the initial premium, it would seem that when an insured gives notice in writing of his cancellation of his policy, and there are no claims against the company for which he is liable pro rata, the cancellation of his policy and his withdrawal of membership should be held complete when the insurer receives notice of such cancellation and the consequent withdrawal. Further continuance of the contract of insurance by an act of the company would be in contravention of the statute. Gately-Haire Co. v. NiagaraFire Ins. Co. 221 N.Y. 162, 116 N.E. 1015; CrownPoint Iron Co. v. Aetna Ins. Co. 127 N.Y. 608,28 N.E. 653.
In the prescribed paragraph for "Cancellation of Policy" (which is in sec. 202.085, Stats.) it is provided that, —
". . . In such cases the company shall, upon demand, and surrender of this policy, refund the excess of paid premium
above the customary short rates for the expired time. . . ."
In view of the words "upon demand" in this provision, it is obvious that the refund of the excess of paid premium does not become due until payment thereof is demanded by the insured. Consequently, because of that express statutory provision in the policy, there is not applicable in this case the rule that in order to effect the cancellation of the usual standard fire insurance policies or policies of that type, there must be a repayment or tender of the unearned premium. John R. Davis Lumber Co. v. Hartford Fire Ins.Co. 95 Wis. 226, 239, 70 N.W. 84; Gabriault v. Genske,219 Wis. 383, 386, 263 N.W. 86. *Page 330 
Plaintiff's contention that defendant is estopped to set up the cancellation of the policy cannot be sustained. There are no facts alleged in the complaint or in the affidavits filed by plaintiff which can be deemed to constitute the basis for an estoppel. Plaintiff demanded in his letter of January 8, 1948, the cancellation of the policy on January 10, 1948, and returned it to defendant with the letter. This constituted a cancellation of plaintiff's policy without any action or option on the part of defendant. By its letter of January 11, 1948, it sought to have plaintiff reconsider his action, but instead of replying, plaintiff obtained a policy with the other company for the same coverage. His cancellation of the policy was neither induced nor brought about by any action or conduct of defendant, and there is nothing in or by reason of its letter of January 11, 1948, upon which plaintiff can base an estoppel, or claim that he was in any way misled or prejudiced by any acts or conduct of defendant, or that he changed his position in reliance thereon.
By the Court. — Order affirmed.