WISCONSIN CENTRAL RAILWAY COMPANY, Respondent, vs.
　　PHŒNIX INSURANCE COMPANY OF HARTFORD, CON-
　　NECTICUT, Appellant.

*November 17—December 13, 1904.*

*Fire insurance: Agents: Employment to procure insurance: Authority
　　of agent: Cancellation of policy: Evidence.*

1. An insurance agent may be the agent of the assured in procuring
　　insurance, but, when a conflict of duties arises, his authority
　　to act for the assured must yield to his duty as agent for the
　　insurance company imposed by sec. 1977, Stats. 1898.
2. Where an agent is employed to procure insurance, such employ-
　　ment, in itself, does not authorize him to represent the assured
　　for the purpose of receiving notice of cancellation of subsist-
　　ing insurance, and to substitute other insurance in place of the
　　insurance sought to be cancelled.
3. Where an insurance agent procures insurance for the owner by
　　applying to another agent to write it, without any direction
　　from the assured to the latter, the agent receiving the order
　　from the assured, by force of sec. 1977, Stats. 1898, is the agent
　　of the company issuing the insurance.
4. In an action on insurance policies issued by defendant's agent at
　　the request of F. & L., insurance brokers to whom plaintiff
　　had applied for insurance, it appeared, among other things,
　　that the defendant's agent attempted to cancel such policies
　　and substitute others. Under the evidence stated in the opin-
　　ion, it is *held* that F. & L. had no express or apparent authority
　　from plaintiff to represent it and to receive notice of cancella-
　　tion of policies, or to procure and accept new insurance in place
　　of the subsisting policies ordered cancelled by defendant.

APPEAL from a judgment of the circuit court for Winne-
bago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

An action upon two policies, issued by the defendant in-
surance company to plaintiff, upon shingles of plaintiff at
Menasha, Wisconsin. One policy bears date January 31,
1903, for $2,500, and the other, February 7, 1903, for
$1,000. It appears that the insurance was effected by Fur-
long & Leedom, who were engaged in the insurance business
in the city of Milwaukee at the time these policies were

issued, and had conducted a business as insurance brokers
for a considerable period prior to this time. At the time of
this transaction and for some time prior thereto, Thos. H.
Gill had been the general attorney of plaintiff, and had had
general charge of plaintiff's insurance business. He re-
quested Furlong & Leedom, on the 31st of January, 1903,
to place insurance on shingles in plaintiff's possession for
transit at Menasha, Wisconsin, to the amount of $64,000.
A part of the insurance was placed by Furlong & Leedom in
companies they represented, but the greater portion of it
they requested Fieweger & Co., who did a local insurance
business at Menasha, to place in companies represented by
them. Among the policies they issued were the two policies
sued on—one for the amount of $2,500, under date of Janu-
ary 31, 1903; and another for the amount of $1,000, under
date of February 7, 1903. These policies were in the form of
the Wisconsin standard fire insurance policy, insuring plaint-
iff against loss on these shingles for a year. The policies were
sent to Furlong & Leedom by Fieweger & Co., and were de-
livered to Mr. Gill for plaintiff, and he had possession of them
at the time of the fire, which occurred at the hour of 10:45
a. m. of February 19, 1903. After the policies were reported
as issued by Fieweger & Co., some of the companies directed
Fieweger & Co. to cancel policies, because they did not wish
to carry this risk. In carrying out these instructions for
cancellation, Fieweger & Co. made the usual entries in their
office books of policies issued, noting the direction to cancel,
and they then substituted policies of other companies for the
amount canceled, and they then communicated by letter with
Furlong & Leedom, informing them that they were directed
to cancel the policies designated, and inclosing the substituted
policies. Upon receipt of such letters and policies, Furlong
& Leedom made entries upon their office record to the effect
that letters with substituted policies had been received, and
that the original policies were ordered canceled, and there-

after they called upon Mr. Gill to apprise him of the substitution, and to demand an exchange, delivering the substituted policies, and receiving the original policies from him. On February 17, 1903, Fieweger & Co. wrote Furlong & Leedom, inclosing several policies, as substitutes for the two policies in suit and others which they had been directed to cancel. This letter, with inclosures, reached Furlong & Leedom on the morning of February 18th, and they immediately made the usual entries of receipt and cancellation in their office books, sought telephone communication with Mr. Gill concerning the transaction on the 19th of February, but could not reach him on account of his absence from the city of Milwaukee. On the 20th of February, Mr. Leedom called at Mr. Gill's office, informed him of the communication from Fieweger & Co. received by his firm on the 18th of February, tendered him the substituted policies, and demanded return of those for which the substitutes were offered. Mr. Gill refused to receive the policies then tendered him, and refused to deliver those demanded of him, stating that he knew of no policies covering the loss aside from those in his possession. No formal notice of cancellation under the provisions of the policies is claimed to have been given. The court found that Furlong & Leedom had no express authority from plaintiff to cancel any of its policies, and that no substitution of any of its policies was effected, and that the usual course of conducting the business of insurance conferred no authority on Furlong & Leedom to cancel policies. To effect a substitution, policies had to be delivered to Mr. Gill, be approved and accepted by him, and those for which the substitutes were offered had to be surrendered by him. It appeared that Furlong & Leedom received separate orders from Mr. Gill when plaintiff wished to place any insurance through their agency, and that they received their compensation by way of commissions on policies issued by companies they represented and by division of the commissions on

thè policies written by the local agent. Mr. Gill testifies that he gave no express orders to Furlong & Leedom to keep the line of insurance so ordered by him up to the full amount, either in the case of these shingles or at any other time, and that he at no time, gave them express authority to cancel or substitute policies. This statement is corroborated by the agent's testimony. Proof of loss was made by plaintiff to defendant under the policies in suit. Defendant denied liability. The court found defendant liable under the policies, and awarded judgment for the amount due thereon in plaintiff's favor. Defendant appeals from the judgment.

For the appellant there was a brief by *Miller, Noyes & Miller,* and oral argument by *Geo. H. Noyes.*

*M. C. Phillips,* of counsel, for the respondent.

SIEBECKER, J. Upon the foregoing statement of facts of the case the circuit court held that Furlong & Leedom were not the agents of the plaintiff to receive notice to cancel subsisting insurance, and held that the policies sued on were in force at the time of the fire. It is strenuously insisted by the defendant that the facts and circumstances show that Furlong & Leedom had authority from the plaintiff to receive notice to cancel subsisting policies and procure substituted insurance to keep up the full line of insurance originally ordered. An insurance agent may be the agent of the assured in procuring insurance, if his duties as such agent do not conflict with his duties as agent of the insurance company, under sec. 1977, Stats. 1898; but when a conflict of duties arises his authority to act for the assured must yield to that imposed by this statute. *Schauer v. Queen Ins. Co.* 88 Wis. 561, 60 N. W. 994; *John R. Davis L. Co. v. Hartford Ins. Co.* 95 Wis. 226, 70 N. W. 84; *Welch v. Fire Asso.* 120 Wis. 456, 98 N. W. 227. It is also well established that, where an agent is employed to procure insurance, such employment, in itself, does not authorize him to represent the

assured to receive notice of cancellation of subsisting insurance and to substitute other insurance in place of the insurance sought to be canceled. *Body v. Hartford Ins. Co.* 63. Wis. 157, 23 N. W. 132; *Wicks Bros. v. Scottish U. & N. Ins. Co.* 107 Wis. 606, 83 N. W. 781. The facts of the *Body* Case correspond to those of the instant case as to the manner of procuring insurance through an agent applying to another agency to write it. There, as here, the application was made to an agency, which placed the insurance through another, without a direction from the assured to the latter. Under such circumstances the agency receiving the order from the assured are, under sec. 1977, Stats. 1898, the agents of the insurance company issuing the insurance. The question, then, is, do the facts and circumstances proven in the case show that Furlong & Leedom had express or apparent authority from plaintiff to act for it in receiving notice to cancel subsisting policies? The record discloses that both Mr. Gill and Mr. Leedom testified on the subject of express authority, and denied that any was ever given or received. We find no other evidence directly on this subject, and must therefore conclude that plaintiff gave no such authority to Furlong & Leedom by express direction.

It is contended that the policies sued on had been terminated by the issuance and delivery of substituted insurance by Furlong & Leedom, upon the ground that the course of business as conducted between them amounted to giving authority to cancel subsisting insurance and substituting other policies. This is predicated upon the claim that whenever these agents received notice of cancellation of any insurance they made an office record of such notice, and made entries on their office books declaring such policies canceled and others substituted as of the time and under the date of the original policy, and they thereupon delivered such substituted policies to Mr. Gill, by whom they were received in place of the canceled policies. It is also claimed that this course of conduct-

ing the business was a direction to the agents to keep up the line of insurance to the full amount; and that this was done by them, it is claimed, is evidenced by the way they made substitution whenever directions to cancel policies came to their notice.    We cannot assent to these contentions.    It seems to us that the findings of the trial court against this view are abundantly supported by the evidence.    It is shown without contradiction that Mr. Gill gave specific direction on each occasion when ordering insurance to be placed, as to the amount, and no policy was ever accepted unless he approved of the company issuing it, and the amount for and the terms upon which it was written.    It also appears that he retained possession of the policies, and that, when apprised of the fact that insurance was ordered canceled, he would determine whether the policies held by him were to be surrendered, whether the insurance was to be kept up to the original amount, and whether the substituted policies were to be accepted.    Nor did Messrs. Furlong & Leedom receive their compensation from plaintiff.    Whatever compensation they received was paid directly by the companies, or was received by them by a division of the commission with the local agents. Furthermore, every order for insurance given them seems to have been undertaken and executed as a separate and distinct employment in procuring insurance and receiving payment of premiums.    Under these facts and circumstances it must be held that Furlong & Leedom had no express or apparent authority from plaintiff to represent it and to receive notice of cancellation of policies, or to procure and accept new insurance in place of subsisting policies ordered canceled. Their duties, under the orders of Mr. Gill, were performed and completed when the policies first issued were delivered to him.    Policies could be terminated only in conformity to their stipulation, or by agreement with him as the company's representative.    Their employment and the course of conducting the business in procuring the insurance for plaintiff

·gave them no authority to receive notice of or to consent to cancellation, nor were they authorized to keep up the insurance to the amount originally ordered. Similar transactions were considered by the courts in the following cases, and like conclusions reached: *White v. Ins. Co. of N. Y.* 93 Fed. 161; *Grace v. American Cent. Ins. Co.* 109 U. S. 278, 3 Sup. Ct. 207; *Buick v. Mechanics' Ins. Co.* 103 Mich. 75, 61 N. W. 337; *Stebbins v. Lancashire Ins. Co.* 60 N. H. 65. The findings of the trial court are fully sustained by the evidence, and must be affirmed.

*By the Court.*—Judgment affirmed.