LIBERTY TEA COMPANY, INC., Respondent, vs. LA SALLE FIRE INSURANCE COMPANY, Appellant.

*September 16, 1931—February 9, 1932.*

640

642

For the appellant there were briefs by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *James D. Shaw.*

For the respondent there were briefs by *Robert V. Baker, Jr.* of Kenosha and *Leonard M. Spira* of Chicago, attorneys, and *Harold M. Wilkie* of Madison of counsel, and oral argument by *Mr. Wilkie* and *Mr. Spira.*

The following opinion was filed October 13, 1931:

FAIRCHILD, J. The form of a special verdict is largely in the discretion of the trial court. "Such verdict shall be prepared by the court in the form of questions, in writing, relating only to material issues of fact and admitting a direct answer." Sec. 270.27, Stats.

Where the court's attention is called to a controverted matter of fact essential to sustain a judgment, an opportunity for a finding thereon by the jury should be provided in a proper case. *Pratt v. Peck,* 65 Wis. 463, 27 N. W. 180; *Bartlett v. Beardmore,* 77 Wis. 356, 46 N. W. 494; Clementson, Special Verdicts, p. 189.

The questions should be framed, so far as practicable, to secure the most direct consideration of the evidence as it applies to the issues made by the pleadings and supported by the evidence. *Baxter v. Chicago & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644.

The respondent in support of the refusal to submit the questions requested by the appellant urges the lack of positive and direct evidence that would support an affirmative answer to such questions. But there is evidence in the testi-

mony of witnesses, by document and by photographs, which would warrant a jury in determining the fire was of incendiary origin. Competent evidence was given tending to show that respondent's profits in the business were not as represented, and that the claim of damages is excessive. It is conceded that the plaintiff's agents securely locked the store building about 9:30 p. m. October 3d, and there is no suggestion of any change from what these agents left within the store from that time until the fire occurred about three o'clock a. m. October 4th. There was no fire in the stove and no stock was carried of any substance which would account for a "flash fire," the kind which occurred. The burning of the store to the extent described by the witnesses and as shown by the photographs is evidence at least that some unusual arrangement had been provided to produce a conflagration. The presence of the fusee in the merchandise that had been blown out on the sidewalk, considered together with the fact that the fire started under the circumstances detailed, is a reasonable basis for the belief that the fusee had been in the store. From the testimony referred to, it must, as a matter of experience, be conceded that if the fusee were in the store and burned down to the cap it would furnish a logical explanation of the development of the fire and help to disclose the means used to secure the result. These things and the further testimony tending to show the exaggeration of the loss by statements in inventories and proofs of loss, if believed by the jury to exist, would meet the requirement of the rule governing such cases, and an affirmative answer to either of the requested questions would be held to be supported by evidence that is clear and convincing. Among the facts disclosed and not in dispute are the following: No path was followed by the fire; the wooden floor was not seriously burned except where it is burned in such a way that it seems reason-

able to conclude that some inflammable liquid was present. The physical part of the building was not consumed, the burning of the interior was largely superficial and substantially even. It appeared to be a "flash fire."

Under the pleadings and the evidence in this case the appellant had a right to have submitted, as part of the special verdict, appropriate question or questions covering the issue of incendiarism, so framed as to permit a direct answer by the jury upon this issue. A question was included in the special verdict which in a way covered this issue, but it was more indirect than it should have been to cover this issue, and the instructions upon that question as given by the court were too brief to be of much service, and too barren of reference to this important point to overcome and remove the prejudice resulting from the mistake in not submitting a strictly proper question.

The sufficiency of the evidence to show a loss greater than $7,801.63 on stock, and greater than $1,663.30 on fixtures, is sharply called in question. The testimony bearing upon this point may be analyzed with two objectives in mind: First, Is there evidence showing stock on hand of the value of $20,702.32? and second, Is there any credible evidence tending to show that $12,421.83 "stock out of sight" was in store number 4 at the time of the fire?

The method used by the insured to show the amount of stock of merchandise on hand is by a computation based on books and inventories. The November 1928 inventory showing goods on hand in all stores to be $24,343.64 is used as the basis of the calculation made by adding subsequent purchases and deducting the cash amount of sales less a claimed profit of twenty-two and one-half per cent. to determine the stock on hand October 3, 1929. This volume of profit becomes important, for if it were less the amount of goods sold would be proportionally greater, and the re-

sult would be less stock on hand at the time of the fire, consequently a smaller loss would result. There is some testimony that during five months of the life of this corporation the profits were but 9.54 per cent. The income tax return for 1928, for the partnership which preceded the corporation, showed a gross profit of 16.42 per cent. Either of these percentages, if used as a factor in the foregoing computation, would reduce in a marked degree the amount of goods on hand.

It seems to be accepted that $7,801.63 worth of merchandise was in the store at the time of the fire. The dispute is over the claim that in addition to the $7,801.63 there was $12,421.83 worth of stock also there and that it was so completely destroyed as to be beyond tracing. The evidence by which this existence of the determining factor of twenty-two and one-half per cent. gross profit is shown is found in the testimony of Mr. Levin, a certified public accountant, who testified in substance that the gross profits had to be determined from inventory and not from the actual book figures, because the books were never closed. "The corporation was organized in November and the fiscal year was not up until the following November, and the fire occurred prior to that. Profit can be ascertained from inventory, but that does not necessarily give you a final figure, unless you have the actual book figures of the sales and purchases and the final inventory. Average profits can be known just from what has happened in the past. In the month of August, 1929, they took an actual inventory, and at that time I made out a financial statement, statement of profit and loss, showing the profit for this period, and arrived at a gross profit at that time." The inventory of August, 1929, on which this witness relied was not produced and his testimony was based on his recollection of results arrived at by him at the time. His testimony tends to show that in making the financial statement he found a

weighted average of about twenty-two per cent. of gross profit. The president of the respondent testified that the August inventory was lost. The testimony was competent and the weight to be given to it was for the jury to determine.

Objection by appellant to respondent's attempt to support its claim to twenty-two and one-half per cent. of gross profit by use of a list covering the range and price of goods handled without regard to the frequency with which items are purchased and sold, ought to have been sustained. All this could supply would be a simple average of the percentages of profits. Articles in great demand selling at low gross profit would be a more important element than one yielding a higher profit but with a reduced turn-over. Such a computation will not reveal the percentages of actual gross profit because the items are not weighted with the volume of sale of each item. The admission in evidence of this list showing an average of gross profit of twenty-seven or thirty per cent. was error.

There remains the question as to whether or not there is any evidence that $12,421.83 worth of goods was affected by this fire. Were they in the store? The photographs received in evidence show, as suggested in the statement of facts, a rather superficial burning of the interior of the store. A member of the fire insurance patrol testified that the photographs show the condition the store was in after the fire. "In the rear the stuff was packed mostly in the center of the floor. It was in piles. There was no place in those piles where there was an extensive burning. We found no evidence at any place of the fire consuming any substance. The shelves of the west wall were, charred all the way to the front, but on the east wall they were intact though charred on top."

· A summary of the evidence shows no severe burning of the physical structure of the building. Toward the rear,

the floor in front of the ice box, which divided the front from the rear and constituted a partition, there was burning, and on the floor in an aisle on the west side of the building for a space of about five or six feet. There appears to have been some fire toward the west wall, but no place, as far as the merchandise was concerned, where there was substantially greater burning than in any other place. Cartons with goods in them were scorched but not burned. There were no piles of coal or ashes, nor anything of that sort to indicate the entire burning of any pile of merchandise. The case goods were piled in the center extending from immediately back of the ice box to the rear end, mostly in paper cartons, and some of the paper carton part was burned off leaving the canned goods just as they were in the cartons, the sides were burned off. There was a pile of débris lying on the floor toward the front, mostly canned goods, no burst cans.

The testimony given by Isidore Rotman is to the effect that the retail department was in front, and in the rear of the store was merchandise and office. They referred to the back of the store as the warehouse. He testified that in the front of the store they had close to $3,000 or $3,500 worth of stock and the balance was in the back. He was asked this question after some reference to the other three stores owned by the insured:

"*Q*. Then all the rest of this claimed stock of $24,000 or $26,000, whatever it may be, was wholesale stock? *A*. Yes, sir.

"*Q*. And that wholesale stock was not opened and laid on the counters or anything of that sort? It was in packages, boxes, barrels, bags, and things like that? *A*. Yes, sir.

"*Q*. Just as you got it from the wholesale brokers? *A*. Yes, sir."

He testified that of the total inventory "about $7,000 was in stores 1, 2, and 3 and that would put a total of

$20,000 in store 4, about $3,500 retail, and this would leave about $16,500 in wholesale containers in the rear." This being the evidence, and the tangible circumstances establishing so positively that the item "goods out of sight" could not have been burned so completely as to be beyond identification, the rule which condemns the grounding of a verdict upon anything but probabilities prevents the conclusion that these goods were in this building at the time of the fire. *Falkenstern v. Greenfield,* 145 Wis. 232, 130 N. W. 61; *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142. This sustains the contention of appellant that the superficial character of the fire and the condition found after the fire render it impossible that bulky wholesale stock in packages, boxes, barrels, and bags to the amount of $12,421.83 could have wholly disappeared, while merchandise which was not packed in piles but was distributed on shelves and otherwise throughout the store, and which was more susceptible to destruction than bulky piles of merchandise, was left so as to be readily identified.

The rejection of evidence which is clearly contrary to undisputed laws of nature is in the interests of truth and justice. The rejection does not occur upon light reason and only where an indisputable fact exists and where, as was said by Mr. Justice Dodge in *Musbach v. Wis. Chair Co.* 108 Wis. 57, 84 N. W. 36: "The physical fact is such as human testimony, opinion, or theorizing cannot overcome and of itself is sufficient to defeat the plaintiff's theory submitted to the jury."

A fire burning evenly and the result of a flash, never developing sufficient heat to substantially destroy any part of the structure in which the fire occurs, and leaving a large amount of goods easily identified, in fact paper and labels and other material likely to be consumed remaining intact, could not in the nature of things consume a large amount of merchandise in the same room, in packages as delivered

from the manufacturers or brokers, without some evidence of the burning.

The conclusion therefore must be that the goods claimed were not in the building at the time of the fire; that the respondent knew this, and its proofs of loss were made out with the intention of inducing the insurer, the appellant here, to act to its disadvantage, and the answer to the first question of the special verdict must be changed from "No" to "Yes." The proposition that if the insured knowingly and wilfully, with intent to defraud the insurer, swore falsely in making proofs of loss, such act amounted to a fraud upon the insurer, is familiar. The principles here involved are discussed in *Meyer v. Home Ins. Co.* 127 Wis. 293, 106 N. W. 1087; *Fink v. La Crosse Mut. Fire Ins. Co.* 203 Wis. 350, 234 N. W. 339.

The claim is also criticised because it charges that the respondent's loss on fixtures is in the amount of $3,390. The plaintiff's books of account show that, with no depreciation taken, its total investment in fixtures was $1,663.90, with small additions made after the corporation took over the partnership property, but as to whether this claim can be said to be excessive and to have been false and knowingly and wilfully made is unnecessary to determine in view of the conclusion reached.

*By the Court.*—Judgment reversed, with directions to change the answer to question (1) of the special verdict from "No" to "Yes," and to enter judgment in favor of the defendant dismissing the action.

A motion for a rehearing was denied, with $25 costs, on February 9, 1932.