GILBERT, Respondent, v. UNITED STATES FIRE INSURANCE
COMPANY, Appellant.*

*No. 165. Argued November 5, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 527.)

* Motion for rehearing denied, with costs, on February 2, 1971.

194

For the appellant there were briefs by *Grootemaat, Cook & Franke,* attorneys, and *Robert E. Cook* and *David J. Hase* of counsel, all of Milwaukee, and oral argument by *Robert E. Cook.*

For the respondent there was a brief and oral argument by *Francis X. Krembs* of Milwaukee.

CONNOR T. HANSEN, J. The plaintiff owned a boat that was insured by the defendant under a one-year policy which contained a territorial restriction clause that excluded coverage of the vessel while afloat on the waters of the Great Lakes. A special endorsement and additional premium were required for Great Lakes coverage. The issue of whether the incident causing the loss of plaintiff's boat occurred on territorial waters or the Great Lakes is not before us on appeal. If the jury had found the incident had occurred on territorial waters, the loss would have been covered under plaintiff's basic policy. The territorial coverage was extended by an endorsement providing for Great Lakes coverage for the period from June 30, 1967, to July 9, 1967. The boat exploded and sank on July 23, 1967. The endorsement was actually issued by the defendant, following its usual course of business in processing, and received by the plaintiff, a few days after the loss occurred.

Both the policy and endorsement extending coverage were brokered by Ray Hansen, an independent insurance broker, through the W. R. Gustin Agency, an agent of the defendant.

The defendant denied the claim, alleging the loss occurred after the expiration of the period covered by the endorsement. The plaintiff introduced evidence to prove that he ordered Great Lakes coverage for the entire month of July.

Gilbert testified that on June 30, 1967, he called the Hansen Agency and asked to speak with Hansen, but was told that Hansen was not in; that he left a message with the person who had answered the phone requesting Great Lakes coverage for the entire month of July; and that the person with whom he spoke stated she would relay the message. On the issue of the period of time for which the extended coverage was requested, the following special verdict questions were submitted to the jury:

*"Question No. 2*
"Did Sam Gilbert request of a female answering the telephone of the Ray Hansen Agency that coverage of his insurance policy be extended to cover Great Lakes navigation for the entire month of July, 1967?"

*"Question No. 3*
"If you answer Question No. 2 'No,' then and only then answer this question: Did Sam Gilbert request by telephone communication directly to Ray Hansen that coverage of his insurance policy be extended to cover Great Lakes navigation for the entire month of July, 1967?"

The jury answered question number 2 "Yes." Judgment was entered reforming the policy so as to provide for Great Lakes coverage for the entire month of July, 1967. Defendant has appealed from this judgment.

Four issues are raised on appeal:

(1) Is a mistake made by Hansen, the insurance broker with whom Gilbert placed the order for Great Lakes

coverage, attributable to the appellant under the provisions of sec. 209.047, Stats.?

(2) Is the special verdict finding sufficient to support a judgment for reformation of the policy so as to provide Great Lakes coverage for the entire month of July, 1967?

(3) Is the form of the special verdict defective?

(4) Did the trial court err in ruling admissible testimony concerning conversations between the insurance broker and agents and employees of the appellant?

*Was Hansen appellant's agent so as to make
a mistake by him attributable to appellant?*

Hansen acted as broker in obtaining the Great Lakes endorsement on behalf of Gilbert. The endorsement was issued through the W. R. Gustin Agency. Although the appellant had an agency agreement with the Gustin Agency, it did not have one with Hansen.

We are of the opinion that the trial court correctly ruled that Hansen was an agent of appellant by virtue of sec. 209.047, Stats., and, therefore, any error by Hansen was sufficient to support a judgment reforming the insurance contract.

Sec. 209.047, Stats., provides in part:

"Every person who solicits, negotiates or effects insurance of any kind, . . . on behalf of any insurance company, . . . or person desiring insurance, or transmits an application for a policy of insurance . . . other than for himself, to and from any such company, or who makes or proposes to make any contract for insurance, . . . or who collects any premium, . . . for insurance . . . or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance company, . . . shall be held to be an agent of such insurer to all intents and purposes, unless it can

be shown that he receives no compensation for such services. . . ."

As insurance broker, Hansen, assisted in negotiating and effecting the endorsement. He transmitted the application for the endorsement to appellant through the Gustin Agency. He was to bill for the premium and was to share in the commission. Therefore, Hansen was appellant's agent as defined in sec. 209.047.

Appellant argues, however, that an insurance broker is a dual agent and, notwithstanding the provisions of sec. 209.047, Stats., for the purpose of obtaining the Great Lakes endorsement, Hansen was the agent of Gilbert and not United States Fire Insurance Company. Appellant cites *John R. Davis Lumber Co. v. Hartford Fire Ins. Co.* (1897), 95 Wis. 226, 70 N. W. 84; *Wisconsin Central Ry. Co. v. Phoenix Ins. Co.* (1904), 123 Wis. 313, 101 N. W. 703; and *Hause v. Schesel* (1969), 42 Wis. 2d 628, 167 N. W. 2d 421, for the proposition that a broker is the agent of the insured in procuring new coverage.

In *John R. Davis Lumber Co.* and *Wisconsin Central Ry. Co. Cases, supra,* this court recognized that an insurance broker may be an agent for both the insured and the insurer. However, in neither case did the court hold that the broker is exclusively the agent of the insured in procuring or extending insurance coverage. In *Wisconsin Central Ry. Co., supra,* the court expressly stated that under sec. 1977, Statutes of 1898, the predecessor of the present sec. 209.047, Stats., an insurance broker who procures insurance through another agent is an agent of the insurer.

". . . An insurance agent may be the agent of the assured in procuring insurance, if his duties as such agent do not conflict with his duties as agent of the insurance company, under sec. 1977, Stats. 1898; but when a conflict of duties arises his authority to act for the assured must yield to that imposed by this statute. . . . The

facts [in *Body v. Hartford Ins. Co.* 63 Wis. 157, 23 N. W. 132] correspond to those of the instant case as to the manner of procuring insurance through an agent applying to another agency to write it. There, as here, the application was made to an agency, which placed the insurance through another, without a direction from the assured to the latter. Under such circumstances the agency receiving the order from the assured are, under sec. 1977, Stats. 1898, the agents of the insurance company issuing the insurance. . . ." *Wisconsin Central Ry. Co. v. Phoenix Ins. Co., supra,* pages 316, 317.

In *Hause v. Schesel, supra,* this court held that an insured has no cause of action against the insurer on the policy where he has established a cause of action against the agent for breach of an oral agreement to provide insurance, such causes of action being fatally inconsistent. That decision has no bearing on whether a broker in procuring insurance is an agent of the insurer.

The facts in the present case are similar to those in *Pouwels v. Cheese Makers Mut. Casualty Co.* (1949), 255 Wis. 101, 37 N. W. 2d 869. In that case the court held an independent insurance agent who brokered insurance through an agency having a direct agency relationship with the insurer was an agent of the insurer by virtue of sec. 209.05, Stats. 1947, which is substantially the same as the present sec. 209.047. The court held that reformation was a proper remedy where the insurance contract failed to provide the coverage intended due to a mistake of the independent broker.

In *Trible v. Tower Ins. Co.* (1969), 43 Wis. 2d 172, 181, 168 N. W. 2d 148, this court stated that a mistake made by an independent insurance agent in applying for an insurance policy is attributable to the insurer by virtue of sec. 209.047, Stats.

"Once the insurance company in Wisconsin accepts the application from an independent agent, it is not permitted to deny that the insurance agency was acting as its agent in taking the application. [citing sec. 209.047, Stats.]"

And in *Artmar, Inc. v. United Fire & Casualty Co.* (1967), 34 Wis. 2d 181, 148 N. W. 2d 641, 151 N. W. 2d 289, this court held that an insurance policy may be reformed where the insured informs the agent of the coverage needed, but due to the fault or neglect of the agent, the policy does not provide the coverage necessary to protect the interests of the insured.

*Sufficiency of verdict.*

The difficulty presented by defendant's argument on appeal lies in the fact that it is predicated upon the testimony of Hansen and the subsequent issuance of the endorsement for the period of June 30th to July 9th. However, the plaintiff testified he ordered coverage from the Hansen Agency for the month of July and the jury chose to believe the evidence offered by the plaintiff. There is sufficient credible evidence to support the finding of the jury and the judgment entered thereon reforming the policy. Obviously there was some communication between the plaintiff, the Hansen Agency, the Gustin Agency and the defendant, because the defendant did in fact issue an endorsement.

"The well-accepted rule governing this court's review in a case like this is that the verdict of the jury must be sustained if there is any credible evidence which, under any reasonable view, supports that verdict. This is especially true when, as here, the jury's verdict has been approved by the trial court. The question is not whether there is credible evidence in the record to sustain a finding the jury did not make, but whether there is any credible evidence to sustain the finding the jury did make." *Altiere v. Bremer* (1968), 39 Wis. 2d 548, 549, 550, 159 N. W. 2d 664.

There was an irreconcilable conflict in the testimony as to how Gilbert applied for the Great Lakes endorsement. Gilbert testified that sometime prior to June 30, 1967, he called Hansen, told him he had made plans to

take the boat into Lake Michigan, and asked him about Great Lakes coverage, but did not ask Hansen to obtain coverage for him at that time. He testified that on June 30, 1967, he called the Ray Hansen Agency; that the telephone was answered by a female; that he asked to speak to Ray Hansen but was told he was not in; that he told this female he wanted Great Lakes coverage for the entire month of July; and that she said she would relay the message. He testified that he did not know the name of the person with whom he spoke. He further testified that other than the telephone conversation prior to June 30, 1967, he did not discuss the period of coverage directly with Hansen.

Hansen testified that it was he who spoke with Gilbert on June 30, 1967; that Gilbert stated he was taking a vacation the following week and was taking his boat to Door county; and that Gilbert asked for the extended coverage through July 9, 1967. He testified that after he spoke with Gilbert, he called the Gustin Agency and ordered the Great Lakes endorsement for Gilbert for the period from June 30 to July 9, 1967. Hansen further testified that his only employee was a nineteen-year-old girl, Mary Rowe; and that she was on vacation on June 30. Mary Rowe also testified she was Hansen's only employee; that she did not speak with Gilbert on June 30, 1967; and that she was not working on that day. Hansen did, however, testify that he had an answering service in June of 1967.

The trial court, in ruling on motions after verdict, found Question No. 2 of the special verdict sufficient to support the judgment. We agree with the trial court's determination that the only conflicting testimony concerned these two versions as to how the application for the Great Lakes endorsement was made by Gilbert. And since the Great Lakes endorsement was thereafter issued, and because the jury believed Gilbert's version with regard to the length of time for which the coverage

was requested, the error must have been made by Hansen when he ordered the endorsement from the Gustin Agency.

Appellant contends that Question No. 2 of the special verdict, inquiring whether plaintiff spoke to a female answering the telephone of the Ray Hansen Agency was not sufficient to support the judgment because there was no proof this female was an agent or employee of the Hansen Agency.

We conclude the affirmative answer to the special verdict question does support the judgment. In arriving at this conclusion, we consider it significant that the jury chose to believe the testimony offered by the plaintiff that he did in fact request coverage for the month of July, rather than the testimony of Hansen which was to the effect that plaintiff called him directly and requested coverage for a shorter period of time. This, coupled with the fact the defendant did ultimately issue an endorsement at the direction of Hansen, although for a shorter period of time than the jury found the plaintiff requested, is support for the judgment. Much of defendant's argument seems to ignore the fact the jury found that plaintiff had requested coverage for thirty days and that the Hansen Agency, the Gustin Agency and the defendant did actually respond to the request, although the endorsement finally issued was for ten days, rather than one month.

In *Kiviniemi v. American Mut. Liability Ins. Co.* (1930), 201 Wis. 619, 627, 231 N. W. 252, this court held that when, in the ordinary course of business, a telephone call is made to a place of business and someone there accepts the communication, it is prima facie evidence that the person receiving the call is authorized to do so, even though that person is not identified:

". . . when one calls up a person's place of business by phone in the usual way in connection with business with such person and someone there answers and under-

takes to accept the communication, this is *prima facie* evidence that the message was delivered to someone authorized to receive it on behalf of that person, even though the voice of the person is not identified. . . ."

In the instant case, the plaintiff testified that the person with whom he spoke answered his call by stating, "the Ray Hansen Agency," and thereafter undertook to accept his communication. It having been determined that the plaintiff requested coverage for one month, followed by Hansen's overt acts in securing the endorsement actually issued, it is not necessary that plaintiff prove the identity of the person who received the call or that she was an agent or employee of Hansen, the defendant's statutory agent.

In *Artmar, Inc. v. United Fire & Casualty Co., supra,* this court held that where the insured informs the agent of his coverage needs; relies on the agent to provide the necessary coverage; and a mistake is made by the agent in effecting coverage, reformation of the policy is permitted in favor of the insured. The court stated that a unilateral mistake of the agent is sufficient grounds for reformation of an insurance contract because of the insured's reliance on the agent to adequately protect his interests.

". . . A cause of action for reformation of an insurance policy is allowed when the one seeking reformation shows that because of fraud or mutual mistake the policy does not contain provisions desired and intended to be included. In insurance cases less is required to make out a cause of action for reformation than in ordinary contract disputes. One reason for this standard is quoted in *Jeske v. General Accident Fire & Life Assur. Corp.:*

" ' "In common practice the assured informs the agent of his coverage necessities and leaves it entirely to the agent to provide therefor. The average individual accepts the policy tendered relying upon the assurance on the part of the insurer, express or implied, that the policy affords him the coverage desired." '

"The standard for reformation of an insurance contract where fault or neglect of the agent is involved is spelled out by 13 Appleman, Insurance, p. 368, sec. 7609:

" 'Where a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties, because of the fault or neglect of the agent, it may be reformed so as to express the contract it was intended should be made. Where the party applying for insurance states the facts to the agent and relies on him to write the policy, which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual. The insured has been held entitled to a reformation and is not limited to a return of the policy and demand of a rescission.

" 'A mistake due to the negligence of an agent, acting within the scope of his employment, is satisfactory ground for reformation, since the insured ordinarily relies upon the agent to set out properly the facts in the application. . . .'

"This statement permits an action for reformation when there is a mistake by the agent, even though the mistake is not technically mutual. Moreover, the statement recognizes the reliance which most people place upon an insurance agent to protect their interests." *Artmar, Inc. v. United Fire & Casualty Co., supra,* pages 186, 187.

In the present case, the insured did not inform Hansen directly; however, once the statutory agent of the defendant undertook to secure the endorsement the situation takes on a different complexion. Under the facts of this case, the verdict was sufficient to support the judgment.

*Special verdict form.*

Appellant contends that the verdict was improper in form because it inquired only as to Gilbert's, but not Hansen's, version of the facts, which versions it claims were not inherently inconsistent. However, Gilbert testi-

fied that on June 30th, he spoke to an unidentified female and asked for extended coverage for the entire month of July; and he denied that he discussed the period of coverage with Hansen. Hansen testified that he spoke with Gilbert on June 30th, and Gilbert asked for extended coverage through July 9th. There is no way these two versions can be reconciled; they are absolutely inconsistent. There is no evidence to support a proposition that two calls were placed on June 30, 1967.

The form of the special verdict question is discretionary with the trial court and will not be interfered with as long as the material issues of fact are covered by appropriate questions. *Plummer v. Leonhard* (1969), 44 Wis. 2d 686, 695, 172 N. W. 2d 1; *Garcia v. Chicago & N. W. Ry.* (1950), 256 Wis. 633, 637, 42 N. W. 2d 288. Furthermore, the plaintiff had the burden of proving that he applied for the extended coverage for one month and the failure of the policy to provide that coverage was due to the mistake or neglect of the agent. This court has held that special verdict questions should be framed so as to put the burden of proof on the affirmative. *Sloan v. Brown County State Bank* (1921), 174 Wis. 36, 182 N. W. 363; *Kausch v. Chicago & Milwaukee Electric Ry. Co.* (1921), 173 Wis. 220, 180 N. W. 808.

Appellant also contends the special verdict was defective because Question No. 3 was framed in terms of a contention advanced by neither party at the trial. Question No. 3 inquired whether Gilbert communicated his request for extended coverage of the entire month of July directly to Hansen. There was no evidence which would have supported an affirmative answer to that question.

" 'The questions should be framed, so far as practicable, to secure the most direct consideration of the evidence as it applies to the issues made by the pleadings and supported by the evidence.' *Liberty Tea Co. v. La Salle Fire Ins. Co.* 206 Wis. 639, 643, 238 N. W. 399."

*Thoresen v. Grything* (1953), 264 Wis. 487, 492, 59 N. W. 2d 682.

However, this question was not answered by the jury and had no direct effect on the judgment in plaintiff's favor. The inclusion of this question would be grounds for a new trial only if it were prejudicial in that it had the effect of misleading the jury. We find the submission of Question No. 3 to be nonprejudicial error.

*Did the trial court err in ruling admissible testimony concerning conversations between Hansen and agents and employees of United States Fire?*

Subsequent to the explosion and sinking of Gilbert's boat, Hansen had several conversations with Robert Burridge, an insurance agent employed by the Gustin Agency; and Burridge had several conversations concerning the loss with Delores Keller and Walter Gustin, employees of the Gustin Agency, and with Robert Loukota, a claims manager for United States Fire. These conversations dealt with the possibility of affording Gilbert coverage for the loss despite the fact his Great Lakes endorsement had expired on the date of the loss, and were offered for the purpose of proving an acknowledgment on the part of employees and agents of United States Fire, that a mistake was made in issuing the extended coverage endorsement.

The defendant's objection to all the conversations was grounded upon the holding of this court in *Rudzinski v. Warner Theatres* (1962), 16 Wis. 2d 241, 114 N. W. 2d 466. However, the trial court ruled admissible certain testimony concerning the substance of these conversations.

In *Rudzinski v. Warner Theatres, supra,* this court held that hearsay statements of an agent are not admissible against his principal, as admissions against interest, unless the agent's statements were within the

scope of the agent's authority to speak for his principal. In that case the plaintiff testified as to what an agent of the defendant had said to her.

In the present case, with one exception, none of the testimony cited by appellant as inadmissible admissions against interest, were extrajudicial statements of the agent. In each instance, the agent was testifying as to what he had said or done. Such testimony is not hearsay.

". . . Two well known definitions of 'hearsay' should be noted. One is that 'by "hearsay" is meant that kind of evidence which does not derive its value solely from the credit to be attached to the witness himself, but rests also in part on the veracity and competency of some other person from whom the witness has received his information.' The other asserts that the hearsay rule 'is that rule which prohibits the use of a person's assertion, as equivalent to testimony of the fact asserted, unless the asserter is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and of his qualifications to make it.' " 2 Jones, *Evidence* (5th ed.), p. 514, sec. 268.

Such statements not being hearsay, were admissible in evidence.

"Evidence of statements of agents, whether or not such statements are authorized, is admissible in favor of and against the principal, if admissible under the general rules of evidence as to the admissibility of such statements by persons not agents." Restatement 2 *Agency*, p. 651, sec. 289.

"It is pertinent to note the distinction between the extrajudicial declarations of an alleged agent and his sworn testimony in the trial of a cause. He may, of course, testify in court to any relevant matter of which he has knowledge, whether it be the fact or scope of agency or his acts and conduct with respect to the transaction, or other pertinent facts." 2 Jones, *Evidence* (5th ed.), p. 669, sec. 355.

In one instance, Hansen testified as to what Burridge had said to him. This testimony was hearsay. However, Burridge was in court and available for cross-examination. Hansen had previously testified to the same conversation, without objection. Moreover, Burridge himself had previously testified concerning the same conversation. Therefore, it does not appear that appellant was prejudiced by Hansen's hearsay testimony. Also we find no substance to defendant's argument that these conversations were inadmissible because they constituted settlement negotiations. There is nothing in the record to indicate that settlement of plaintiff's claim was ever discussed.

*By the Court.*—Judgment affirmed.