Galen **SCHUKNECHT**, Appellant,

v.

**WESTERN MUTUAL INSURANCE COM-
PANY, Appellee.**

No. 55160.

Supreme Court of Iowa.

Jan. 17, 1973.

Frye & McCartney, Charles City, for appellant.

Kennedy, Kepford, Kelsen & White, Waterloo, for appellee.

REES, Justice.

This appeal comes to us from a decree of the district court entered in an equity action by which plaintiff sought to reform three certain liability insurance policies on the grounds of mutual mistake. Trial court dismissed plaintiff's petition and entered judgment against him for costs, and he brings this appeal.

On and prior to January 16, 1967 plaintiff was engaged in the business of farming, and operating a truck-mounted cornsheller which he used in a custom shelling business. The truck was identified as a 1948 International KB6 two-ton, six-cylinder truck, number H64935. Plaintiff had been a client of the Sperry-Ray Insurance Agency of Greene, Iowa, which was apparently a sole proprietorship owned and operated by Mr. Charles R. Ray. Ray had been active in the operation of the agency from July 1, 1962 until 1969, when he sold his interest in the agency to one Brinkman. During a portion, at least, of the time Mr. Ray was engaged in the insurance business at Greene, he employed a secretary in his office, one Mrs. Ruffridge.

Three insurance policies issued by defendant are involved in this litigation: policy No. 3-384-553 was issued January 16, 1967, by which defendant agreed to insure and protect plaintiff against liability arising out of the operation by plaintiff of a certain truck described as a 1948 International KB6, two-ton, six-cylinder truck, No. H64935, upon which there was mounted a cornsheller; the second policy, No. 3-417-149, issued January 16, 1968, by which the defendant agreed to insure and protect plaintiff from liability occasioned by his operation of a 1964 GMC two-ton truck upon which was mounted a cornsheller, and which was described as model No. V4008; the third policy, No. 3-425-164, dated January 16, 1969, reflected the same undertakings on the part of the defendant to plaintiff as did the second policy above referred to.

While the first policy was in force, plaintiff acquired the 1964 GMC two-ton truck and cornsheller. Plaintiff testified that on the morning of November 1, 1967, after the cornsheller was mounted on the GMC truck he had just acquired, he went to the Ray insurance office and asked Mr. Ray to "put insurance on my new cornsheller". He further testified he asked Mr. Ray if he could put both of the cornshellers on the same policy, and Mr. Ray answered that he thought he could. Apparently on November 1 there was prepared in the office of Agent Ray a form request for change of automobile policy which directed the defendant company to transfer the coverage on policy No. 3-384-553 to a 1964 GMC two-ton truck with sheller, model No. V4008. One of the questions on the request for change of automobile policy form was, "Does insured still own the automobile that is being eliminated?" The answer to this question on the form (which is identified in the record as plaintiff's exhibit 1) is, "No." The request for change of automobile policy form was apparently forwarded to the defendant company, as it bears a file stamp indicating its receipt in the office of the company on November 2, 1967.

Exhibit 1 purports to bear the signatures of the agent, Charles R. Ray and the insured, Galen Schuknecht. On the trial of

the case, however, Mrs. Ruffridge, the agent's employee, testified she signed the names of both Ray and Schuknecht on the form. She testified she had authority from Ray to sign his name, but had no authority to sign Schuknecht's name on the change of policy form.

Neither Ray nor Mrs. Ruffridge could testify with any positiveness that a copy of the form had been forwarded to the insured Schuknecht.

Apparently when the request for change of policy form above referred to reached the home office of defendant, the company caused to be issued its substitution of automobile endorsement as a part of policy No. 3–417–149. The endorsement indicates it became effective on November 1, 1967, and by its terms provides the policy to which the endorsement is attached, was amended to cease to apply to the 1948 International truck and to apply to the 1964 GMC truck and sheller. Both plaintiff and his wife testified they did not at any time receive a copy of the substitution of vehicle endorsement. Agent Ray testified that while the insured would not get a copy of the request for change (exhibit 1), that it would be unusual if the insured did not receive the original of the substitution endorsement, although he (Ray) said he had no knowledge of mailing the endorsement to Mr. Schuknecht, nor could he remember delivering the same to him.

Mrs. Ruffridge, the secretary in the Ray Insurance Agency office, testified that normally the endorsement would be mailed to the insured at the same time a statement was made out and mailed for the increase in premium occasioned by the substitution of auto, although she was unable to testify from any record or from her direct knowledge that the endorsement (defendant's exhibit 2) was at any time mailed or otherwise delivered to the plaintiff. Mrs. Ruffridge stated that in April of 1969, while policy No. 3–425–164 was in force, the plaintiff came into the insurance office and changed the medical pay coverage on

the policy from $500 to $2000, and a change of coverage endorsement was secured and the plaintiff was billed for the increased premium.

There is no question, apparently, but that the policies issued January 16, 1968 and January 16, 1969 referred only to the 1964 GMC truck, and no question further but that the policies were delivered to the plaintiff.

In his petition plaintiff prayed the court to enter its order reforming policy No. 3–425–164 (the policy issued January 16, 1969) by including in the declaration of the policy the words and figures "1948 International KB6, two-ton truck, and mounted cornsheller, number 864935, six cylinder", and for such other reformations of said policy as would provide plaintiff with a policy of insurance to insure and protect him against any liabilities occasioned by the negligent operation of the 1948 truck and sheller during the period of time of coverage afforded by said policy, to the end that the policy would correctly recite the claimed agreement of the parties.

The underlying motivation for the institution of the suit was the fact the 1948 truck was involved in an accident on September 2, 1969, and plaintiff had been exposed to suit and liability as a consequence of the accident.

In its answer defendant admitted the issuance of the policies and admitted that the defendant company had removed the 1948 truck and sheller from the provisions of policy No. 3–425–164—the policy covering the term January 16, 1969 to January 16, 1970. The defendant, however, denied it had neglected or failed to notify the plaintiff of its action in removing said truck and sheller from the coverage of the policy, and denied that such removal from the policy was contrary to the direction of the plaintiff. It further denied it had failed and neglected, through mistake and inadvertence, to conform the policy issued in 1967 to include the 1964 truck and sheller, or that it had deleted the 1948 truck

and sheller from the coverage of the policy contrary to the agreement and understanding of plaintiff and defendant's agent.

Further, in its answer the defendant alleged plaintiff had been guilty of laches and unreasonable delay in asserting any claimed rights or in bringing any action thereon against the defendant, and further stated plaintiff had paid insurance premiums to the defendant based upon the coverage afforded him by the two latter policies, one issued in 1968 and one in 1969, and based upon the coverage afforded him after the endorsement was issued removing the 1948 truck from the policy issued in 1967. Defendant further asserted in its answer that the 1948 sheller and truck had been involved in an accident on September 2, 1967, as a consequence of which a suit had been filed against plaintiff demanding judgment for $146,822.16, and that to afford plaintiff the relief he seeks in this action would materially affect the rights of defendant and subject defendant to liability. Defendant, therefore, prayed that plaintiff's petition be dismissed.

Trial court entered extensive findings of fact substantially as above recited, and concluded the burden was on plaintiff in the action for reformation of the policy to establish a mutual mistake by clear, satisfactory and convincing evidence. The trial court concluded that if the insurance agent, Ray, made a mistake as alleged by plaintiff, such a mistake would have been a mutual mistake, but the court's ruling was based on its conclusion that Ray made no mistake on November 1, 1967 in removing the 1948 truck from the coverage of defendant's policy, and that the subsequent renewal policies issued by the defendant to plaintiff were not the result of mistake. The court thereupon dismissed the petition of the plaintiff.

Plaintiff urges four propositions to justify a reversal: (1) a mistake due to the negligence of an insurance agent, acting within the scope of his employment, is a satisfactory ground for reformation of the insurance policy, where the insured relies upon the agent to insure his property as requested; (2) insurance company is bound by coverage in earlier policy where renewal policy is issued without calling to insured's attention a reduction or a change or a substitution in the policy coverage; (3) when a policy of insurance has been delivered to the insured he is entitled to assume that the property requested to be insured is correctly described in said policy and in failing to read the policy or its renewals he is not guilty of such negligence as would bar reformation; and (4) the record does not support the trial court's finding.

■ I. Succinctly stated, all of the propositions urged by plaintiff for reversal of the trial court must of necessity rest upon the legal principle that written instruments, including policies of insurance, may be reformed when, and only when, the party seeking reformation establishes a mutual mistake, or a mistake on the part of one party and fraud or inequitable conduct on the part of the other, and that the policy as written does not express the agreement of the parties. See Detrick v. Aetna Casualty & Surety Co., 261 Iowa 1246, 1255, 158 N.W.2d 99, 105.

The basic principle that equity may relieve parties against the consequences of mutual mistake in controversies involving the reformation of instruments is concisely stated in 45 Am.Jur. 617, Reformation of Instruments, § 55:

"It is elementary that courts of equity have jurisdiction to relieve parties against the consequences of mutual mistake of fact, and to grant reformation in case of such a mistake. Indeed, when no question of fraud, bad faith or inequitable conduct is involved and the right to reform an instrument is based solely on a mistake, it is necessary that the mistake be mutual, and that both parties understood the contract as the complaint or petition alleges it ought to have been,

and as in fact it was except for the mistake; and this is so whether the mistake is one of fact or one of law, or one of law and fact mixed. Otherwise stated, a unilateral mistake is not ordinarily ground for reformation, the remedy in the case thereof being rescission. The court cannot rewrite the contract which the parties have made so as to express an agreement which they did not enter into. However, the requirement of mutuality of mistake does not apply, it has been held, to a mistake of a scrivener in reducing an agreement to writing."

This court came to grips with this identical question as early as 1918, in the case of Fullerton v. United States Casualty Co., 184 Iowa 219, 223, 167 N.W. 700, 702, 6 A.L.R. 367, 371, where the following appears:

"It is fundamental, of course, that, to be entitled to equitable relief of this kind, the party asking it must show not only that the alleged mistake occurred, but also that it was mutual. In other words, it must be made to appear that by mistake the contract as written fails to express the mutual intent of the parties, and if the mistake be denied, the fact must be established by a clear and satisfactory preponderance of the evidence."

See also Walnut Street Baptist Church v. Oliphant, 257 Iowa 879, 886, 135 N.W.2d 97, 101.

A general standard encompassing the doctrine of mutual mistake in questions involving the reformation of instruments is found in 76 C.J.S. Reformation of Instruments § 28 at 364:

"Mutual mistake, in relation to reformation, means a mistake shared by, or participated in by, both parties, or a mistake common to both parties * * *; both must have labored under the same misconception in respect of the terms and conditions of a written instrument, intending at the time of the execution of the instrument to say one thing and by

mistake expressing another, so that the instrument as written does not express the contract or intent of either of the parties. The mistake cannot be mutual if the minds of the parties to the instrument did not meet in a common intent. By mutuality is not meant that both parties must agree on the hearing that the mistake was in fact made, but the evidence of the mutuality of the mistake must relate to the time of the execution of the instrument and show that at that particular time the parties intended to say a certain thing and by mistake expressed another."

▮▮▮ Obviously, the precise question which confronted the trial court in the matter before us, and now confronts us, is "did plaintiff Schuknecht and defendant's agent Ray both agree and intend that the coverage be different than that evidenced by the actual policy (as changed by the endorsement), and that the policy as it appeared subsequent to the change of vehicle endorsement, violates the understanding of both parties and is consequently the result of a mistake or omission?" In this connection we must address ourselves to the question as to whether plaintiff carried the burden of proof to establish the mutuality of mistake by clear, satisfactory and convincing evidence. This is required by *Fullerton, supra,* and the principle was reiterated in Bales v. State Automobile Ins. Co., 248 Iowa 487, 81 N.W.2d 474, 475, where the following appears:

"The rule is well settled that to justify reformation of an insurance policy, or other written contract, on the ground of mutual mistake, the proof thereof must be clear, satisfactory and convincing."

Applying such a standard, we conclude trial court did not err in its findings and conclusions of law and its order dismissing plaintiff's petition.

II. We have considered all of the propositions urged by plaintiff for reversal and all of the authorities cited by plaintiff in

support thereof. Plaintiff places particular reliance on several cases from the Supreme Court of Wisconsin, and we are forced to the conclusion the Wisconsin court has laid down a significantly different standard in reformation of instrument cases where mutual mistake is involved. In Gilbert v. United States Fire Ins. Co., 49 Wis.2d 193, 181 N.W.2d 527, 534, the Wisconsin court said:

"The standard for reformation of an insurance contract where fault or neglect of the agent is involved is spelled out by 13 Appleman, Insurance, p. 368, § 7609:

" 'Where a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties, because of the fault or neglect of the agent, it may be reformed so to express the contract it was intended should be made. Where the party applying for insurance states the facts to the agent and relies on him to write the policy, which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual. The insured has been held entitled to a reformation and is not limited to a return of the policy and demand of a recission.'

\*    \*    \*    \*    \*    \*

"This statement permits an action for reformation when there is a mistake by the agent *even though the mistake is not technically mutual.* Moreover, the statement recognizes the reliance which most people place upon an insurance agent to protect their interests." (italics supplied.)

See also Artmar, Inc. v. United Fire & Casualty Co., 34 Wis.2d 181, 148 N.W.2d 641, 644, 151 N.W.2d 289.

We conclude there is a meaningful distinction in the rule for reformation of insurance policies as interpreted by the Wisconsin court and the rule which attends in this jurisdiction.

III. The insurance policy which was in force at the time plaintiff acquired the 1964 GMC two-ton truck on November 1, 1967, was changed by the endorsement which is referred to above and which is identified in the record on the trial of this case as defendant's exhibit 2. This policy expired on January 16, 1968 and was supplanted by a new policy which insured the plaintiff against liability growing out of his ownership of the 1964 truck, and did not indemnify him for liability growing out of his operation of the 1948 truck. This policy was, in turn, supplanted by a third policy which became effective January 16, 1969 and which was in force on September 2, 1969, when the accident occurred which obviously precipitated this action. The 1969 policy also indemnified plaintiff against liability occasioned only by his ownership of the 1964 truck.

Plaintiff contends he at no time read or gave any attention to the provisions of the latter two policies, or for that matter, of the 1967 policy which was changed by endorsement. One salient circumstance militates against plaintiff in this regard. While he contends he had no familiarity with the policies involved here, the record conclusively establishes that in April of 1969 about three months following the effective date of the last of the three policies involved, plaintiff came into the office of defendant's agent, and had the medical pay coverage increased from $500 to $2000. He was obviously conversant with the provisions of the policy providing for medical pay coverage, and we feel we are justified in assuming that he became conversant with it after an inspection of the policy itself. An endorsement increasing the medical pay coverage was prepared by the company and plaintiff was billed for the additional premiums occasioned by the policy change. The policy so changed made reference only to the 1964 truck and

none to the 1948 truck which was involved in the accident which precipitated this litigation.

■ Our review of this equity cause is *de novo,* and we give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by such findings. Rule 344(f)(7), Rules of Civil Procedure. We have made an exhaustive review of the record, and find no reversible error.

The judgment and decree of the trial court is, therefore,

Affirmed.

MOORE, C. J., and LeGRAND and HARRIS, JJ., concur.

RAWLINGS, J., concurs specially.

REYNOLDSON, J., concurs specially, joined by UHLENHOPP and Mc-CORMICK, JJ.

MASON, J., takes no part.

REYNOLDSON, Justice (concurring specially).

I can acquiesce in the judgment of my brothers who hold plaintiff's evidence is not strong enough to permit him the relief he demands.

I cannot agree with the majority's statement of the applicable law in two important areas.

I. The majority opinion properly states the general rule requiring evidence to be clear, satisfactory and convincing in order to support reformation. Here, however, we are confronted with an exception, recognized in Iowa and elsewhere, that in reformation cases involving insurance contracts, less actual proof is required than in contract cases generally. Baldwin v. Equitable Life Assurance Society of U. S., 252

Iowa 639, 108 N.W.2d 66 (1961); 43 Am. Jur.2d, Insurance § 356, at p. 405.

II. Neither can I concede there is a basic inconsistency in the rule articulated by the majority requiring "mutual mistake" and the doctrine it calls the "Wisconsin rule." The latter rule is a rule applied in a specific fact situation where courts generally, including Iowa, have held reformation to be justified.

The Wisconsin decision, Gilbert v. United States Fire Ins. Co., 49 Wis.2d 193, 181 N.W.2d 527 (1970), quoted by majority, does not lay down some esoteric rule, but a recognized standard defined in the treatise, 13 Appleman, Insurance Law & Practice § 7609, at p. 368 (1943). As authority for his statement of law, Appleman relies on an Iowa case, Den Hartog v. Home Mut. Ins. Ass'n, 197 Iowa 143, 196 N.W. 944 (1924).

The facts in *Den Hartog* are analogous to those in the case at bar. The insured testified he told the agent the policy was to be issued in his name and the name of another. The agent, as here, could not testify to the issue one way or the other. The policy was issued to Den Hartog alone. After destruction of the premises by fire, the insurer denied coverage because the ownership described in the policy did not conform to fact. Our court reformed the contract and entered decree against the insurer. Relevant here is this portion of the decision, 197 Iowa at 146–147, 196 N.W. at 945:

> "It is well settled that a policy of insurance, like any other contract, may be reformed to carry out the intention of the parties where there is clear and convincing evidence that a mutual mistake has been made. [Citations.]

> *"It is also well settled that in case a mistake is made, due to the negligence of the agent of the insurer, acting within the scope of his employment, a satisfactory ground for reformation is present.* [Citations.]

"Courts have recognized the fact that the insured ordinarily relies upon the agent to properly set out in the application the facts given him. [Citations.]

"It is universally held, so far as we have discovered, that the insurer will not be permitted to avoid the policy by taking advantage of a misstatement in the application, material to the risk which is due to mistake or *negligence of its agent,* and not to fraud or bad faith on the part of the insured. [Citations.]" (Emphasis added.)

This "Wisconsin" rule is also articulated in Mortenson v. Hawkeye Casualty Co., 234 Iowa 430, 12 N.W.2d 823 (1944) and Norem v. Iowa Implement Mut. Ins. Ass'n, 196 Iowa 983, 195 N.W. 725 (1923); cf. Green v. Phoenix Ins. Co. of Hartford, Conn., 218 Iowa 1131, 253 N.W. 36 (1934); Carey v. Home Ins. Co., 97 Iowa 619, 66 N.W. 920 (1896); 43 Am.Jur.2d, Insurance § 359, at p. 410.

The majority, as an original proposition, rejects the "Wisconsin" rule when it is in fact the general rule in the special situation where the neglect of the agent results in erroneous information fed to the insurer and as a consequence there is issued an erroneous policy. Ignored is the fact the rule has been applied in Iowa for years.

A part of the problem this court and other courts have had in this area is the indiscriminate use, demonstrated here, of the phrase "mutual mistake," ripped out of context from a different situation and applied as a test to facts which demand reformation and to which the phrase has no application. In none of the many Iowa decisions similar to the case *sub judice,* where reformation has been decreed, has there been in fact a "mutual" mistake. Ordinarily the insured has made no mistake at all, unless it could be said he did not examine his policy to discover the error. But he was not bound to examine the policy, and would not necessarily have been guilty of negligence for not doing so. Norem v. Iowa Implement Mut. Ins. Ass'n,

supra; 43 Am.Jur.2d, Insurance § 370, pp. 419–20; Annot., 25 A.L.R.3d 1232, 1264–65, at § 9. Even assuming this to be a "mistake" there is no mutuality. The insurance company's "mistake" is not in failing to examine the policy, but the negligence of its agent (chargeable to it) in transmitting vital information.

Relevant here is what the Vermont Supreme Court said in Travelers Insurance Company v. Bailey, 124 Vt. 114, 120, 197 A.2d 813, 817 (1964):

"If, in this kind of case, talk of 'mutuality' of mistake is unnecessary, much confusion can be avoided. * * * The concept of 'mutuality' adds nothing to the right to a remedy in this type of case. It is important as a concept in other, different, reformation situations. Applying to all the common linguistic label of 'mutuality' gives to unlike situations an illusion of similarity. This invites the misapplication of principles, sound for one type of situation, to a different type, for which they are unsound."

The burden of proof plaintiff must carry should not be, as stated by majority, "to establish the mutuality of mistake" by clear, satisfactory and convincing evidence, but merely to establish (by a lesser degree of proof) that the contract did not express the coverage ordered by plaintiff and accepted by defendant's agent.

UHLENHOPP and McCORMICK, JJ., join in this special concurrence.

RAWLINGS, Justice (concurring specially).

I concur in the result. In light of apparent confusion in this jurisdiction regarding applicable guiding principles I would now specifically adopt and make applicable in futuro the so-called Wisconsin standard enunciated in Gilbert v. United States Fire Ins. Co., 49 Wis.2d 193, 181 N.W.2d 527, 534 (1970), quoted by the majority.