John P. Cohalan, Jr., J.
Defendant has brought on a motion for summary judgment pursuant to CPLR 3212 based on a release executed by the plaintiff.
For the purpose of this motion, all the allegations in the complaint are deemed to be true, and to a marked degree are admitted (by failing to deny), in defendant’s answer.
The factual background reveals that plaintiff, on August 17, 1963, was a race car driver participant in a stock car automobile race at the Freeport Stadium in Nassau County. This was the eighth time he had taken part in such races at this track.
Plaintiff’s car and two others became involved in a collision during the course of the race and were immobilized on the travelled portion of the track, and to an unspecified partial degree obstructed the free and uninhibited driving of the other participants.
Theroux suffered no hurt in this three-car collision, but was injured in a subsequent one, as the cars continued to speed around the oval. On the third lap after the initial mishap one of them collided with plaintiff’s immobilized car causing the serious injuries of which he now complains.
The employees of defendant had it within their power to flag down the other drivers and to stop the race by flashing a light or by actually semaphoring the operators to stop. This was not done and forms the basis for plaintiff’s alleged cause of action.
*98 It is Ms position that whereas he had assumed the risks ordinarily attendant upon such a race — such as the three-car mishap mentioned above — he had not assumed any risk of collision by reason of the narrowing of the travelled portion of the track.
In an affidavit submitted in opposition to the summary judgment motion, he stated: “I could not get out of the car while the race continued and the remaining drivers sped around the track ’ thus implying that physically he was able to extricate himself from his damaged car and was not pinned within it.
It thus appears that he preferred the comparative safety of his vehicle to the hazard of obtaining absolute safety by crossing the track on foot.
He also stated that the failure of defendant to stop the race ‘ ‘ constituted gross and wanton disregard of an apparent danger to fail to use them ”. Curiously the complaint charges defendant with ordinary negligence only.
The papers are silent as to width of the track, the length of the laps and whether or not the track was banked. No mention is made either of the number of cars engaged in the subject race, although we may reasonably suppose that at least five took part — the three in the initial collision and two more to finish the race.
Theroux, to quote himself, was ‘ aware that automobile racing is a hazardous sport ’ ’ and that when he ‘ ‘ agreed to compete ’ ’ he “ assumed the ordinary risks which racing drivers accept.”
Further to quote him in part: ‘ ‘ If I had been injured in the first collision I could not complain. If my car had skidded out of control and crashed into a wall I would have to accept the consequences as within the risks assumed. But I never would have raced * * * if * * * given to understand that the standard and customary precautions of the sport were suspended and that we were participants not in a dangerous contest, but in a spectacle of slaughter for which the defendant charged admission from thousands of spectators ”.
Turning to the defense, we are confronted with an instrument signed by plaintiff, at both top and bottom of which is the legend in boldface type one-half inch high “ this is a release.” The text within it, which speaks both in pressenti and in futuro, contains as comprehensive a waiver and release from liability as one could imagine, excerpts of which follow:
“ This agreement is signed for the purpose of fully and completely releasing, discharging and indemnifying from all liability as herein described, all of the parties mentioned as being-released and indemnified hereby.”
“Now in consideration of receiving permission from kedenbttrg racing association, inc. to enter upon the premises com *99 monly called freeport municipal stadium # * * the receipt of which is hereby acknowledged and in further consideration of receiving permission to practice, qualify or otherwise participate in any capacity in any automobile race or event held at said premises * * * each of the undersigned for himself * * * forever release * * * said kedenburg racing association, inc. * * * and also all agents, officers, assistants, employees, servants and successors of said kedenburg racing association, inc. * * * during the entire year and at any and every automobile race * * * during said year, of and from any and all liability, claims, demands, actions, causes of action * * * which the undersigned may have, now has, or which may accrue in his favour in the future * * * which may arise out of injury or damage to his person * * * whether such injury or damage be known or unknown, present or future, by virtue of or in any way arising out of or resulting from or in connection with any such automobile race * * * or from the use of or in connection with any automobile * * * operated or controlled by the promoter * * * or the carrying on of any automobile race * * * upon any of the said property in which the parties above mentioned as being released shall be in any way interested or connected, whether arising while the undersigned is engaged in automobile racing * * * or in any capacity whatsoever, or while upon said premises * * * and regardless of how such injury * * * may arise, and regardless of who is at fault or whose negligence caused such loss * * * or injury, and even if the loss is caused by the neglect or fault of kedenburg racing association, inc. * * * or any of the parties mentioned herein as being released.”
“ The undersigned hereby assumes voluntarily all responsibility and risks for any injury or damages to his own person or property or for any injury resulting in his death, while in or on such property above described, whether caused by neglect or otherwise of any of the parties aforesaid.”
“ The undersigned recognizes that automobile racing is a hazardous sport or occupation and is entering into such activity or any of the activities above described voluntarily, as an independent contractor and not as an employee, servant or agent of any party to this agreement ”.
The instrument also contains an indemnity agreement couched in standard terms, saving all parties harmless for any injuries received by plaintiff while on the premises.
Plaintiff admits to execution of the instrument. He claims, however, that he did not read it, as to which contention the court *100 pays no attention. Papers which are signed should be read before signing and are binding — whether read or not — where no fraud, misrepresentation or duress is present.
Theroux makes the further claim that the paper he signed— call it release, covenant not to sue, indemnity agreement, or a combination of two or more of them — is against public policy, and has submitted citations in support of this argument.
To the court his citations are inapposite for we are not presented with the relationship of employer-employee (Johnston v. Fargo, 184 N. Y. 379; Western Union Tel. Co. v. Cochran, 302 N. Y. 545); nor a common carrier situation (Conklin v. Canadian Colonial Airways, 266 N. Y. 244); nor seller and buyer (Boll v. Sharp & Dohme, 281 App. Div. 568, 570, 571, affd. 307 N. Y. 646); nor landlord-tenant (Leider v. 80 William St. Co., 22 A D 2d 952), in all of which an overriding public policy was present, thus militating against the right of a person to contract himself out of tortious responsibility. Here rather we are faced with a fact situation similar to that in Ciafalo v. Vic Tanney Gyms (10 N Y 2d 294, 296) wherein plaintiff, a patron of defendant’s gymnasium, had agreed to assume full responsibility for any injuries which might befall her ‘ ‘ including but without limitation, any claim for personal injuries resulting from or arising out of the negligence of the defendant ”. She fell near the swimming pool, fractured a wrist and sued.
Speaking for- a unanimous court, Froessel, J., said (p. 297): ‘ ‘ Although exculpatory clauses in a contract, intended to insulate one of the parties from liability resulting from his own negligence, are closely scrutinized, they are enforced, but with a number of qualifications. Whether or not such provisions, when properly expressed, will be given effect depends upon the legal relationship between the contracting parties and the interest of the public therein ’ ’, and, in elaboration of the statement added (pp. 297-298): “ Here there is no special legal relationship and no overriding public interest which demand that this contract provision, voluntarily entered into by competent parties, should be rendered ineffectual. Defendant, a private corporation, was under no obligation or legal duty to accept plaintiff as a ‘ member ’ or patron. Having consented to do so, it had the right to insist upon such terms as it deemed appropriate. Plaintiff, on the other hand, was not required to assent to unacceptable terms, or to give up a valuable legal right, as a condition precedent to obtaining employment or being able to make use of the services rendered by a public carrier or utility. She voluntarily applied for membership in a private organization, and agreed *101 to the terms upon which this membership was bestowed. She may not repudiate them now.”
Similar verbiage appears in Van Dyke Prods, v. Eastman Kodak Co. (12 N Y 2d 301, 304) where Fuld, J., said: “ The law looks with disfavor upon attemps of a party to avoid liability for his own fault and, although it is permissible in many cases to contract one’s self out of liability for negligence, the courts insist that it must be absolutely clear that such was the understanding of the parties. In other words, it must be plainly and precisely provided that limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility ”.
In the court’s opinion the instrument construed herein qualifies under the language of the Van Dyke and Ciafalo citations (supra). Thus the motion of defendant for summary judgment is granted, without costs.