This is an appeal from the Etowah County Circuit Court's grant of summary judgment in favor of all defendants and against plaintiffs, Johnny Lawrence Young and Melissa Young. We affirm.
The action arose out of injuries sustained by Johnny Young while he was operating his "go-kart" on a practice lap just prior to the start of the "Big WAAX Kart Grand Prix" road race. The race was scheduled to be held on September 11, 1983, in Gadsden, Alabama. The race course was laid out on the streets of Gadsden with the city's permission, and all the defendants had some connection with the race.
Upon his arrival in Gadsden, Young paid an entry fee of $30.00 and signed the following release:
STATE OF ALABAMA * RELEASE * _______ Etowah County * _______
 FOR THE SOLE CONSIDERATION of being allowed to participate in the First Annual Go-Kart Grand Prix in Gadsden, Alabama, the undersigned hereby releases and forever discharges *Page 1159 
the City of Gadsden, Alabama, and the members of the Downtown Action Council of Gadsden, American National Bank of Gadsden, Gadsden Budweiser, Runt's Kart Sales of Gadsden and Etowah Broadcasters, dba/WAAX RADIO, their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from the First Annual Go-Kart Grand Prix on or about the 11th day of September, 1982 at or near Gadsden, Alabama.
 Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise, adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.
 /s/ J.Y. Gargus
WITNESS
 /s/ Johnny L. Young
PARTICIPANT
 ___________ GUARDIAN
After signing the release, Young drove a practice lap, and it was at this time that his kart struck a telephone pole, causing him to sustain head and bodily injuries.
Young and his wife filed suit on August 4, 1983, alleging that the defendants negligently or wantonly caused Young's injuries. Over the next eight months, all defendants filed motions for summary judgment, and on June 8, 1984, the trial court granted summary judgment in favor of each defendant. This appeal followed.
The sole issue for our review is whether the trial court erred in granting summary judgment in favor of all defendants because Young had signed a release from liability for injuries sustained in connection with the go-kart Grand prix.
Inasmuch as this Court has heretofore not been called upon to determine the effectiveness of a release from liability in the context of an automobile race, we have considered the decisions of our sister states, as well as federal decisions, and particularly the United States District Court decision in Gorev. Tri-County Raceway, Inc., 407 F. Supp. 489 (M.D.Ala. 1974), wherein that court applied the law of Alabama to resolve the issue of the validity of such a release. In that case Charles Gore was killed as a result of a wreck during an automobile race, and his wife sued for damages based on negligence and breach of contract. The court stated that no Alabama case had been discovered concerning the specific issue, and then went on to say:
 Releases by participants in automobile races have been upheld and found not to violate any public policy in a number of jurisdictions. Doster v. C.V. Nalley, Inc., 95 Ga. App. 862, 99 S.E.2d 432 (1957); Seymour v. New Bremen Speedway, Inc., 31 Ohio App.2d 141, 287 N.E.2d 111 (1971); Winterstein v. Wilcom, 16 Md. App. 130, 293 A.2d 821 (1972); Theroux v. Kedenburg Racing Assn., 50 Misc.2d 97, 269 N.Y.S.2d 789; Lee v. Allied Sports Associates, Inc., 349 Mass. 544, 209 N.E.2d 329 (1965); Corpus Christi Speedway v. Morton, 279 S.W.2d 903 (Tex.Civ.App. 1955).
 It should be noted that participation in automobile races and other sporting events is a voluntary undertaking. If a prospective participant wishes to place himself in the competition sufficiently to voluntarily agree that he will not hold the organizer or sponsor of the event liable for his injuries, the courts should enforce such agreements. If these agreements, voluntarily entered into, were not upheld, the effect would be to increase the liability of those organizing or sponsoring such events to such an *Page 1160 
extent that no one would be willing to undertake to sponsor a sporting event. Clearly, this would not be in the public interest.
407 F. Supp. at 492. After having said this, the court granted defendant's motion for summary judgment.
Several cases have been decided since Gore in which courts from jurisdictions have held that releases from liability in the racing context are valid and are not inconsistent with public policy considerations. See Rhea v. Horn-KeenCorporation, 582 F. Supp. 687 (W.D.Va. 1984); Grbac v. ReadingFair Company, Inc., 521 F. Supp. 1351 (W.D.Pa. 1981); Huckaby v.Confederate Motor Speedway, Inc., 276 S.C. 629, 281 S.E.2d 223
(1981); Thomas v. Sports Car Club of America, Inc.,386 So.2d 272 (Fla. 1980); Gross v. Sweet, 64 A.D.2d 774, 407 N.Y.S.2d 254
(1978); Tope v. Waterford Hills Road Racing Corporation,81 Mich. App. 591, 265 N.W.2d 761 (1978); Johnson v. ThruwaySpeedways, Inc., 63 A.D.2d 204, 407 N.Y.S.2d 81 (1978); LaFrenzv. Lake County Fair Board, 172 Ind. App. 389, 360 N.E.2d 605
(1977); Trumbower v. Sports Car Club of America, Inc.,428 F. Supp. 1113 (W.D.Okla. 1976); Kotary v. Spencer Speedway,Inc., 47 A.D.2d 127, 365 N.Y.S.2d 87 (1975). In a number of these cases summary judgment was granted in favor of the defendant based on the execution of the release.
In Tope v. Waterford Hills Road Racing Corp., supra, the Michigan court discussed whether a release from liability, such as the one before us, was contrary to public policy, stating:
 "When a course of conduct is cruel or shocking to the average man's conception of justice, such course of conduct must be held to be obviously contrary to public policy, though such policy has never been so written in the bond, whether it be Constitution, statute or decree of court."
 There is no constitutional or statutory provision, or court decision which specifically declares the instant release clause, as it relates to auto racing, contrary to public policy. Query: Is it "cruel or shocking to the average man's conception of justice" for a race promoter to insulate itself from liability for its own negligence? We are dealing with a fairly narrow segment of the public participating in a relatively dangerous sporting activity. The general public as a whole is minimally affected.
81 Mich.App. at 596, 265 N.W.2d at 764 (citations omitted). The facts in Tope are strikingly similar to those in the case subjudice. In Tope, the participant was injured in a road race sponsored by the City of Pontiac and a corporate sponsor; the suit alleged negligence in the design and layout of the race course; the injured party had participated in road races before; and the injured party had signed a release from liability prior to being injured. The Michigan court emphasized that the race was run on city highways, which are certainly "not best adapted to race car driving," and, since Tope had experience in road races, he was aware of the increased danger inherent in racing on city streets as opposed to a racetrack.
As in Tope, Young was an experienced driver, and had entered road races in the past. He, too, must have been aware of the hazards of road races; nevertheless, he chose to execute the release and enter the race. He was afforded an opportunity to inspect the course before signing the release, but opted against such an inspection. He executed the release freely and voluntarily, with full knowledge of the dangerous nature of such a road race.
Young has failed to cite any cases that hold these prerace releases void as against public policy. Instead, he relies on cases which deal with situations having more of an impact on the general public, like Housing Authority of Birmingham Dist.v. Morris, 244 Ala. 557, 14 So.2d 527 (1943), which deals with landlord and tenancy law. Young's reliance upon this type of case is misplaced; where, as here "we are dealing with a fairly narrow segment of the public, . . . the general public as a whole is minimally affected." Tope, supra. *Page 1161 
Every case which we have reviewed that discusses prerace releases holds that they are not void as being against public policy. In Gore v. Tri-county Raceway, Inc., the United States District Court, applying Alabama law, went one step further and held, as a matter of law, that not only were these releases not void as against public policy, but that it would be against the public interest not to recognize their validity.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.